### HOWARD v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. May 24, 1898.)

1. MUNICIPAL CORPORATIONS—TORTS OF OFFICERS—LIABILITIES.

The exemption of the former city of Brooklyn, under Laws 1888, c. 583, tit. 22, § 28, from liability in damages for the misfeasance or nonfeasance of officers of the city, was (at least so far as concerned the department of parks) limited to cases where a plain duty was devolved upon the officers

whose misfeasance or nonfeasance caused the injury complained of, and to such cases only.

**2. SAME—INJURY TO PEDESTRIAN FROM BICYCLE—LIABILITIES.**

The mere fact that a city assents, as distinguished from authorizing, to the practice of riding bicycles upon the city sidewalks, does not, in the absence of any ordinance either permitting or forbidding the practice, render the city liable for injuries resulting therefrom to pedestrians.

**3. SAME.**

Nor can the city's liability be predicated upon its mere failure to pass an ordinance forbidding the use of sidewalks by bicycles.

Appeal from trial term.

Action by Charles N. Howard against the city of Brooklyn. From a judgment on a verdict, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks, for appellant.
Ten Eyck & Remington, for respondent.

GOODRICH, P. J.    The plaintiff, while walking on a sidewalk in the city of Brooklyn, was run into by a bicycle ridden on such sidewalk, and thrown down, receiving serious injuries. This action is brought to recover the amount of his damages. The issues were submitted to a jury, which rendered a verdict for the plaintiff; and, from the judgment entered thereon, this appeal was taken.

The complaint alleges that the charter of the city imposes upon it the duty "to maintain and keep the streets and sidewalks in said city in good order, and free from nuisances, and to properly protect them, so that people can pass along and upon them with safety," but that the city, "disregarding its duty in that respect, knowingly and negligently allowed and permitted the sidewalk," at the point where the plaintiff was injured, "to be used by persons riding bicycles thereon at a rapid and dangerous rate of speed, to such an extent as to render it unsafe and dangerous for people to walk thereon; and such practice had become so general as to be a common nuisance, which it was the duty of the defendant to have abated"; that in the evening of September 20, 1895, the plaintiff, while passing on the sidewalk, "by reason of the negligence of the defendant, was struck and violently thrown down by a bicycle ridden at a rapid and dangerous rate of speed," and thereby injured. More briefly stated, the plaintiff's claim is that the city permitted bicycles to be ridden on the sidewalk, at dangerous speed, and to such an extent as to create a common nuisance. The answer denies the city's negligence or knowledge of any such habitual use of the sidewalk, or that the alleged use had become so general as to be a common nuisance, and avers that the care and control of the sidewalk in question were by the charter vested in the commissioner of parks, and that the defendant, as a corporation, was not responsible for the care and control thereof.

The evidence shows that the plaintiff alighted from a street car passing along Flatbush avenue where the latter's westerly side inter-

sects at a right angle the sidewalk along the Plaza, in front of Prospect Park, and, while walking along such sidewalk, was struck by a bicycle, and thrown to the ground, receiving serious injuries. There was evidence tending to show that a very large number of bicycles habitually passed along the sidewalk on the westerly side of Flatbush avenue, going to and from the Willink entrance, some distance east of the Plaza; that they were accustomed to cross the Plaza sidewalk to the roadway of the Plaza, where there was a slanting curb, intended to allow bicycles to leave the sidewalk. There is no evidence that the bicycle in question was going at a dangerous rate of speed, except that the plaintiff says:

"I only could judge the rate of speed of the bicycle from the shock. I was struck, and it threw me over on my right arm; upset me completely; threw me down violently, sufficiently to break the kneecap, and sprain my arm so that it was even more painful than the knee. It was a violent shock,—a very violent shock for the time."

The defendant's counsel, at the close of the plaintiff's evidence, moved to dismiss the complaint, on the grounds that the place of the accident was under the jurisdiction of the commissioner of parks, and that the city was not responsible for anything the commissioner had done or omitted to do in respect to the management of that place; citing section 28 of title 22 of the charter of the former city of Brooklyn (Laws 1888, c. 583), and section 2 of title 16, as amended by chapter 947 of the Laws of 1895. Section 28 reads as follows:

"The city of Brooklyn shall not be liable in damages for any misfeasance or nonfeasance of the common council, or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the provisions of this act, or of any other duty enjoined upon them, or any or either of them, as officers of government, by any provision of this act; but the remedy of the party or parties aggrieved for any such misfeasance or nonfeasance shall be by mandamus, or other proceeding or action, to compel the performance of the duty, or by other action against the members of the common council, officer, or appointee, as the rights of such party or parties may by law admit, if at all."

Section 2 devolves upon the department of parks, inter alia, exclusive management and control of all the parks, squares, and public places in the city, and to govern, manage and direct the same, and to regulate the public use thereof, "and of such parts of the several roads, streets or avenues as run through or intersect the same, and to pass and enforce laws and ordinances for the proper use, regulation and government thereof, and for all the purposes of such government, management and direction of public use, such parts of said roads or avenues as pass through or intersect said circles, shall be deemed to be a part of Prospect Park, and it shall be under like control and management as said parkway." The department was also authorized "to make ordinances, rules and regulations for their proper management and government," and to appoint "such police force as they may deem expedient."

Another ground of the motion to dismiss was that:

"If the court can find evidence sufficient to warrant the inference of a commission [sic] given by the park commissioners or the city of Brooklyn that there was an entire devotion to the use of bicycles of this sidewalk, so it became a bicycle track, where bicyclists had a right to ride, and a

person crossing there was in the same position in regard to the care required of him as one crossing a street, and therefore, it not appearing that Mr. Howard exercised any special care, he is not exempt from the implication of contributory negligence."

As to the first ground, it may be assumed that the department of parks had absolute control of the place of the accident, and that it could have prevented the use of the sidewalk by bicyclists. Bieling v. City of Brooklyn, 120 N. Y. 98, 24 N. E. 389, was an action against the city and Ripley Ropes, who was commissioner of public works, for damages resulting from the falling of an awning upon the plaintiff in a public street, and a judgment had been recovered against both defendants. The awning was of a character forbidden by the city ordinances, and was unsafe. The court said (page 103, 120 N. Y., and page 389, 24 N. E.): "The evidence was such as to permit the jury to find that the plaintiff's injury was attributable to the negligence of the city, through its constituted authorities,"—and held that the claim of exemption by reason of section 28 (above cited) was limited to cases where a plain duty is devolved upon certain officers whose misfeasance or nonfeasance has caused the injury complained of, and to such cases only; that the duty of the city to keep its streets in safe condition for public use was a primary one, resting upon the city; that the various departments and officers charged with that duty were only instrumentalities created and employed to perform the corporate functions of the city, and that the latter was responsible for the consequences resulting from their negligent action or omission; that the control given to the commissioner of public works was subject to the direction of the common council, in which is vested the general powers of the city, except so far as the latter are delegated by the charter to other officials. The court affirmed the judgment against the city, and held it responsible for the damages, but reversed the judgment as to Ropes, on the ground that he was not personally at fault.

Title 16, c. 583, Laws 1888, which creates the department of parks, contains a provision similar to that referred to in the Bieling Case, supra. Section 2 reads:

"The said department of parks shall have the exclusive government, management and control, subject, however, to the laws of the state and to the powers of the common council in relation thereto, of all the parks. * * *"

I can see no difference, therefore, between the liability of the city in respect to the place in question and that which was stated in the Bieling Case.

This brings us to a consideration of the principles upon which the liability of the city for the accident is to be adjudicated. The plaintiff's contention may be briefly stated as follows: The city negligently permitted bicycles to be ridden over a sidewalk of the city, and one of them struck the plaintiff, and injured him. Toomey v. City of Albany, 14 N. Y. Supp. 572, decided by the general term of the Third department, was a case where the plaintiff's horse and sleigh, standing on a public street, were struck and damaged by a bobsleigh engaged in coasting down the street. The claim was that

the accident was due to the negligence of the defendant in allowing the street to be used for coasting, and the court said (page 573):

"The prevention of fast driving and the like is a part of the police business of the city. And a negligent performance of that business or duty is not a ground for action against the city. Pierce v. City of New Bedford, 129 Mass. 534; Coonley v. City of Albany (Sup.) 10 N. Y. Supp. 512. We do not think it necessary to discuss the question whether the city might be liable for an affirmative act, such as authorizing coasting or fast driving. As was said by the court of appeals in Cohen v. Mayor, etc., 113 N. Y. 539, 21 N. E. 702: 'We confine ourselves to the decision of this case.' "

In 2 Dill. Mun. Corp. § 981, note 2, it is said:

"For injuries suffered by one passing along or over a public street in a city, with persons 'bobbing or coasting' on such street, the city is not liable. Schultz v. City of Milwaukee, 49 Wis. 254, 5 N. W. 342; City of Lafayette v. Timberlake, 88 Ind. 330; Burford v. City of Grand Rapids, 53 Mich. 98, 18 N. W. 571; Faulkner v. City of Aurora, 85 Ind. 130; Pierce v. New Bedford, 129 Mass. 534; Steele v. City of Boston, 128 Mass. 583. While this may be a public nuisance, its suppression is a police duty, and not a duty in which a corporation, as such, has a particular interest, or from which it derives any special benefit, in its corporate capacity; and for the non-performance of such duty by its officers and agents the corporation is not liable. Hayes v. City of Oshkosh, 33 Wis. 314; Schultz v. City of Milwaukee, 49 Wis. 254, 5 N. W. 342; Wallace v. City of Menasha, 48 Wis. 79, 4 N. W. 101."

Assuming that the city is not discharged of liability, by reason of the cited devolution of authority upon the department of parks, I am unable to see any distinction between the authorities above referred to and the case at bar. Many of the authorities on which the plaintiff relies are cases where there were obstructions of a stationary character in the streets; and this court, in the case of Lundbeck v. City of Brooklyn (Sup.) 50 N. Y. Supp. 421, Mr. Justice Woodward writing, recognized the liability of the city for damages resulting from the plaintiff's falling over the stump of a tree which had been permitted to remain on the sidewalk. In that opinion authorities were cited upon similar questions, but the cases do not affect the present question. Here, the liability is claimed to result from an assent, not an authorization, of the city, to bicycle riding upon the sidewalk. There is no principle of common law which prevents such a use of the sidewalk of a public street, and there is no evidence in this case of any ordinance either permitting or forbidding it. The case of Weet v. Trustees, etc., cited in the note in 16 N. Y. 161, is an illustration of the subject. This was an action to recover damages resulting from the plaintiff's falling into an uncovered hole; and the court held the village liable, on the ground that whenever a corporation has become bound by covenant or agreement, under power received from the sovereign authority, to do certain things, the corporation, in case of neglect to perform such covenant, is liable in an action brought by any person injured by its neglect. But I find no case which extends the liability of a city to a failure to pass an ordinance forbidding the use of streets or sidewalks by vehicles. The bicycle is a machine of such recent adoption that it is not strange that the question of its use on sidewalks has not yet arisen; but there is no difference in principle between its use and that of any other vehicle. An analogy between the rights

incident to the use of a sidewalk and those incident to the use of a street crossing may be useful. The court of appeals, in the case of Barker v. Savage, 45 N. Y. 191, held that neither footmen nor vehicles have any right of way superior to the others in street crossings; that they each have the right in common and equally with the other, and, in its exercise, are bound to use reasonable care for their own safety, and to avoid doing injury to others who may be in the exercise of the equal right of way with them.

In 2 Dill. Mun. Corp. § 951, it is said:

"A failure by the corporation to exercise its charter power to abate nuisances, not rendering its streets unsafe, does not give a person who is injured by such failure a private action against the corporation; and therefore where a house in a city was destroyed by fire caused by sparks from an engine on the adjoining property, which was by ordinance a nuisance that the city might have abated, but which, after notice and request, it had neglected to abate, the city is not liable in damages for such nonaction and neglect, to the owner of the house destroyed."

In the note, one case (Hubbell v. City of Viroqua, 67 Wis. 343, 30 N. W. 847) is cited where a person was injured by a bullet from a shooting gallery licensed by the city, but situated on private property; and another where the city was held not liable to one who was injured while assisting to extinguish a fire in a manufactory of fireworks, on the ground that it had failed to exercise the power expressly committed to it to prohibit such manufacture. McDade v. City of Chester, 117 Pa. St. 414, 12 Atl. 421.

In Shearman & Redfield on the Law of Negligence (section 262) it is said:

"In the absence of an express statutory declaration fixing a liability therefor, a municipal corporation is not bound to provide for, and secure, a perfect execution of the laws of the state or of its own ordinances, within its limits; and it is not liable in damages for the consequences of its officers' failure to enforce them, although, but for such neglect, the injury complained of would not have happened. The enforcing, no less than the adoption, of ordinances, such as the regulating of building operations, or the use of streets, or the forbidding the display of fireworks, or the engaging in dangerous sports in public streets and places, is a public governmental duty, as to which actionable negligence cannot be predicated. Such a failure to execute the laws is neglect of a duty owing to the public, not to individuals. It necessarily follows that the corporation is not responsible for the acts of persons engaged in the violation of a law or ordinance, resulting in an injury to a third person, though such illegal acts might and ought to have been prevented by the officers of the corporation, and although the officers themselves, and even a majority of the citizens, actively participated in the illegal proceeding. Thus, a municipal corporation is not liable for injuries caused by persons unlawfully coasting upon its streets, even when the authorities had tolerated the sport, or had publicly set apart a particular street for that purpose. Having a discretion as to what ordinances it will adopt, the corporation has a like discretion and power to suspend the operation of its ordinances temporarily or indefinitely."

Numerous cases are cited in support of this principle.

The present case must be distinguished from cases where the city has given a license to do a certain act, as in the case of Speir v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, where the city had given a license for the display of fireworks by which the plaintiff's house was set on fire. The court held the city liable for an improper exer-

cise of its powers in granting such permission; but this was an instance of positive action. The most that can be said in the case at bar is that the city failed to exercise power, which the plaintiff contends it might have exercised, in preventing the use of the sidewalk for bicycles.

For these reasons, the judgment and order must be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.