### LANDAU v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 8, 1904.)

1. MUNICIPAL CORPORATIONS — PERSONAL INJURIES — FIREWORKS—LIABILITY—SUSPENSION OF ORDINANCE—LICENSE.

A resolution by the board of aldermen suspending an ordinance relating to the discharge of fireworks in a city so far as it applied to meetings and parades of political parties during the campaign, subject to such restrictions as the police department might determine necessary, was a repeal of the ordinance, and not a license to such parties, and the city was not liable for damages for the death of an individual caused by an explosion of fireworks during a political celebration.

2. SAME.

The resolution could not be construed merely as authorizing the police to license the display of fireworks during political celebrations.

3. SAME—EVIDENCE—NUISANCE.

In an action against a municipality for damages for the death of a person caused by an explosion during a display of fireworks which it was claimed the city had licensed, it was error to exclude evidence on the part of the city that similar exhibitions, with the same kind of materials, had been given many times without accident.

4. SAME—QUESTION FOR JURY.

The city was entitled to have submitted to the jury the question as to whether the display of fireworks constituted a nuisance.

Appeal from Trial Term, New York County.

Action by Salomon Landau, administrator, against the city of New York. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

This is a statutory action to recover for the death of George Landau, alleged to have been caused by the negligence of the defendant. On the evening of November 4, 1902, which was election day, the National Association of Democratic Clubs, which had its headquarters at the Hoffman House, had a parade, and was celebrating the supposed result of the election by a display of fireworks on the park side of Madison avenue between Twenty-Fourth and Twenty-Fifth Streets. The decedent was in the neighborhood of Twenty-Fourth street and Madison avenue, and met his death by an explosion of fireworks which occurred about 10 o'clock.

On the 21st day of October, 1902, sections 718 and 719 of the Revised Ordinances of the City of New York, theretofore duly adopted by the municipal legislative body pursuant to authority granted by the Legislature, were then in force, and provided as follows:

"Sec. 718. No person shall fire, discharge or set off in the city of New York any rocket, cracker, torpedo, squib, balloon or other fireworks or thing containing any substance in a state of combustion under a penalty of five dollars for each offense. The provisions of this section shall not apply to the grounds at the southeast corner of One Hundred and Twenty-Seventh street and Fifth avenue.

"Sec. 719. No person shall sell, or expose for sale, nor fire, discharge or set off in the city of New York any fireworks called by the names of snakes, or chasers, or any fireworks called or known by the name of double headers, nor any fireworks under any other name composed of the same material and of the same character as those fireworks specified in this section, under the penalty of $50 for each offense, to be sued for and recovered of the persons exposing the same for sale, firing off or discharging the same. And in case such person shall be an apprentice, such penalty shall be sued for and recovered from the master of such apprentice. In case such person shall be a minor and not an apprentice, the same shall be sued for and recovered of and from the father, or in case of the death of the father, then of and from the mother or guardian of such minor."

On the last named day the board of aldermen adopted a resolution as follows:

"Resolved, that the ordinance relating to the discharge of fireworks in the city of New York be and the same are hereby suspended so far as they may apply to meetings and parades of political parties or associations during the campaign of 1902; such suspension, however, to continue only until November 10, 1902, and be subject to such restrictions and safeguards as the police department may determine as necessary."

This resolution was approved by the mayor on the 27th day of October, 1902. Thereafter, and prior to the day in question, the city clerk, without further action of the board of aldermen, transmitted a copy of this resolution to the commissioner of police, who in turn transmitted a copy to all borough inspectors of police, precincts, and squads, with a letter saying that it was transmitted for their information and guidance. It appears that Inspector Brooks on the night in question had charge of the police in the territory bounded by Twenty-Eighth street, Fourth avenue, Twenty-Second street, and Fifth avenue, consisting of about 700 men. On the previous day the inspector saw an announcement in one of the daily papers of the intended parade and display of fireworks, which was to the effect that the fireworks were to be set off from the top of the Flatiron Building. On election day he sent a sergeant to obtain more definite information about the parade and fireworks, and thus ascertained that the fireworks were to be both on Madison avenue and in front of the Worth Monument. It was reported to the inspector about 3 o'clock in the afternoon that preparations were being made in Madison avenue between Twenty-Fourth and Twenty-Fifth streets for sending off the fireworks. The inspector had 500 policemen on duty that night in and about Madison Square, and he detailed two sergeants, two roundsmen, and 85 of

this number to cover Madison avenue between Twenty-Third and Twenty-Sixth streets, with a view to having them regulate and protect the crowd in the vicinity of the fireworks. The fireworks display commenced about 9:20 p. m., and at that time it is estimated there were about 75,000 people in and about Madison Square watching the announcement of election returns and the display of fireworks. The fireworks consisted of sky rockets, flower pots, and bombs. The bombs were fired from mortars by lighting a fuse. Neither the size of the mortars nor the nature nor character of the bombs is disclosed, other than that they were of the kind commonly used for such purposes. There were several rows of mortars, made of steel tubing. The mortars were in the carriageway of the avenue, in rows extending north and south. The longest row appears to have been about 25 or 30 feet, and there were five or six shorter rows, covering altogether 8 or 10 feet in width of the carriageway, commencing at a distance variously given as 10 to 18 feet from the westerly curb. It appears that there was difference in the size of the mortars, and that the larger ones rested on the pavement and the smaller ones in barrels of sand. It appears that some considerable time before the accident bombs had been fired from the southerly end of the long row without accident, but when they reached the northerly end there was a premature explosion of some of the fireworks, followed by a general explosion, with great violence, killing and injuring a great many people. The cause of the explosion does not definitely appear. At this time crowds lined both sidewalks and curbs around the fireworks. It appears that the fireworks were obtained from Pain, who has attained a wide reputation with respect to display of fireworks. No one connected with the police department was applied to for or gave any permission for the display, or gave any directions or did anything concerning the same, except in endeavoring to regulate the crowd and keep the people back a reasonable distance.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Theodore Connoly, for appellant.
Charles Steckler, for respondent.

LAUGHLIN, J.   We are of opinion that the city is not liable for this unfortunate accident. If it had happened before the municipal legislative body had enacted any ordinance prohibiting the discharge of fireworks, even though authority to enact such ordinances had been granted by the Legislature, or through its failure to enforce them if enacted, it is clear that there would be no liability. The rule is well settled that a municipality is not liable for its failure to enact or enforce ordinances. Leonard v. Hornellsville, 41 App. Div. 106, 58 N. Y. Supp. 266; Griffin v. The Mayor, 9 N. Y. 456, 61 Am. Dec. 700; Lorillard v. Monroe 11 N. Y. 392, 62 Am. Dec. 120; Coonley v. City of Albany, 132 N. Y. 145, 30 N. E. 382; Stillwell v. The Mayor, 49 N. Y. Super. Ct. 360, affirmed 96 N. Y. 649; Levy v. The Mayor, 1 Sandf. 465. It follows logically that no liability can be predicated on account of the repeal of an ordinance. An ordinance may be repealed one day and enacted the following day, or a week, or a month, or a longer period later. The suspension of an ordinance is not a license to do the acts previously prohibited, but merely precludes a prosecution for the penalty during the period of such suspension, the same, in effect, as if the ordinance were repealed. As well might it be said that the failure to enact an ordinance is a license to the public to do all things that might be prohibited by ordinance. The board of aldermen in enacting the ordinance originally might have excepted the 4th of July from its operation, and might have excepted the display of

fireworks during political parades or celebrations. Had it been so provided in the ordinance, it could not have been successfully maintained that this constituted a license from the municipality to all inhabitants to set off fireworks on the 4th of July, and during political parades and celebrations, making the city responsible for any damages resulting therefrom. The situation would be in that event that the ordinance imposing the penalty and prohibiting the acts on other occasions did not apply on such occasions, and the liability as to such occasions would be the same as if the legislative power to enact ordinances had not been exercised at all. These views are sustained by numerous authorities. Howard v. City of Brooklyn, 30 App. Div. 217, 51 N. Y. Supp. 1058; Boyland v. New York, 1 Sandf. 27; Ball v. Woodbine, 61 Iowa, 83, 15 N. W. 846, 47 Am. Rep. 805; Lincoln v. Boston, 148 Mass. 578, 20 N. E. 329, 3 L. R. A. 257, 12 Am. St. Rep. 601; Robinson v. Greenville, 42 Ohio St. 625, 51 Am. Rep. 857; Norristown v. Fitzpatrick, 94 Pa. 121, 39 Am. Rep. 771; McDade v. Chester, 117 Pa. 414, 12 Atl. 421, 2 Am. St. Rep. 681; O'Rourke v. Sioux Falls, 4 S. D. 47, 54 N. W. 1044, 19 L. R. A. 789, 46 Am. St. Rep. 760; Wilmington v. Vandegrift, 1 Marv. (Del.) 5, 29 Atl. 1047, 25 L. R. A. 538, 65 Am. St. Rep. 256; Wheeler v. Plymouth, 116 Ind. 158, 18 N. E. 532, 9 Am. St. Rep. 837; Kelley v. Milwaukee, 18 Wis. 83; Hill v. Board of Aldermen of Charlotte, 72 N. C. 55, 21 Am. Rep. 451.

Nor can it be successfully maintained that the board of aldermen authorized the police to license the display of fireworks during political celebrations. It would not be competent for the board of aldermen to thus delegate legislative power, nor was this the intention of the resolution suspending the ordinance in the particulars specified. The reference to the police department was made so that the members of the police force would understand that the board of aldermen did not intend by the action taken to interfere with the exercise of such authority as was vested in the police department or possessed by the peace officers to preserve law and order, and prevent the destruction of life and property. The police officers were left in precisely the same condition concerning the display of fireworks on the night in question as if no ordinance had ever been enacted on the subject. Under their general police powers, they were authorized to prevent the doing of an act in a public street dangerous to life or property, and to prevent this display of fireworks if, in their opinion, the same would constitute a nuisance or was likely to injure life or property. It does not appear that the police misunderstood the action of the board of aldermen in this regard; but, of course, that could not affect the liability of the city, for they did not assume to license or permit this display of fireworks. Of course, the city is not liable for the acts or omissions of the members of the police force.

A fair test for determining whether there was a license from the city is to inquire whether, if the members of the police force had attempted to prevent a discharge of the fireworks which was dangerous to human life, those in charge would have presented any license or authority from the city for the acts which they were about to perform. In the case at bar, manifestly, they could not. The case is entirely

unlike that of Speir v. City of Brooklyn, 139 N. Y. 6, 34 N E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664, where the city was held liable for damages caused by a fire started by fireworks discharged under a special license from the mayor granted pursuant to the terms of an ordinance which prohibited the discharge of fireworks without such a license. In that case the legislative body, after determining that the discharge of fireworks was dangerous and prohibiting it under a penalty, assumed to license such dangerous acts on special application. Here there was no license to any of the residents or sojourners in this city. The city did not assume to permit the discharge of fireworks. It merely withdrew the penalty in certain instances for a specified period, leaving every individual or organization to the responsibility for his own acts in discharging any kind of fireworks. It did not assume to determine that a particular place was safe for the discharge of a particular kind of fireworks. It did not approve as safe the discharge of any kind of fireworks. It doubtless was not anticipated that individuals or political organizations would be so reckless as to discharge fireworks of a character endangering life in public places. It is a matter of common knowledge that there are many kinds of fireworks that may be discharged without danger to life, and such is the character of those generally used of these occasions. The principal danger to be apprehended from the discharge of fireworks, and that was intended to be guarded against by the ordinance, was the destruction of property by fire. It was doubtless expected that with greater vigilance on the part of the police force on these special occasions the danger to property might be minimized, and the members of a political party or organization be permitted to show their enthusiasm in an innocent way by the discharge of ordinary harmless fireworks.

It being evident that all of the material facts upon which a liability could be predicated are before us, we have deemed it proper to express our views upon the merits of the case. But the judgment would have to be reversed in any event, on account of an exception to the exclusion of evidence that similar exhibitions, with the same kind of bombs, had for a great many years been given several nights a week at Manhattan Beach, without accident, and also to the court's refusal to submit the question to the jury as to whether this display of fireworks constituted a nuisance. The learned trial judge rules that the city was liable as matter of law, and only submitted to the jury the question of damages. The effect of this ruling was that the mere explosion constituted conclusive evidence that the acts were negligent or constituted a nuisance per se. The defendant, in any event, would have been entitled to show the character of the combustibles and the nature of the covering, and to show the result of previous experiments with like combustibles, in like quantities and casings, as bearing on the question as to whether it was negligence to permit the fireworks to be set off at the place in question, or as to whether the city could be charged with permitting the creation of a nuisance. It must be borne in mind that it is not claimed that the city was setting off these fireworks. The claim is that it licensed the political organization to do so.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.   All concur.

PATTERSON, J., concurs in reversal on grounds last stated in this opinion.