SOLOMON LANDAU, as Administrator of GEORGE LANDAU, Deceased, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

1. MUNICIPAL CORPORATIONS ARE LIABLE FOR PERMITTING SUCH USE OF FIREWORKS IN PUBLIC STREETS AS CONSTITUTES A DANGEROUS NUISANCE. While a municipal corporation is not liable for the failure to pass ordinances prohibiting the discharge of fireworks in the public streets, it is bound to exercise due care to keep its streets in a safe condition and is liable for permitting dangerous obstructions or nuisances therein. If an ordinance is passed in relation to the subject and it is not enforced or is subsequently repealed, there is no liability for the repeal or for the mere failure to enforce, but still the duty remains as to obstructions and nuisances ; that duty never ceases and it cannot be avoided by the passing of ordinances or the failure to pass them.

2. WHEN EXHIBITION OF FIREWORKS MAY CONSTITUTE A NUISANCE. Fireworks exhibited on an extensive scale in a great thoroughfare in the midst of a large city, where a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact.

3. NEW YORK (CITY OF) — WHEN LIMITED PERMISSION OF CITY TO EXHIBITION OF FIREWORKS IN PUBLIC STREETS RENDERS IT LIABLE TO THOSE INJURED BY THEIR PREMATURE EXPLOSION. A resolution adopted by the board of aldermen and approved by the mayor of the city of New York, " *Resolved,* that the ordinances relating to the discharge of fireworks in the city of New York be and the same are hereby suspended so far as they may apply to meetings and parades of political parties or associations during the campaign of 1902; such suspension, however, to continue only until November 10th, 1902, and be subject to such restrictions and safeguards as the police department may determine as necessary," is in substance and effect a license or permit to display fireworks in the public streets, which display had previously been prohibited but was thenceforth permitted as to a limited number of persons for a limited period of time and does not constitute a repeal of the ordinances either in form or substance. Where, therefore, an exhibition takes place under the supervision of the persons and within the time authorized, under such circumstances as would permit a jury to find that it constituted a public nuisance, the city is liable for the damages occasioned to those injured by a premature explosion of the fireworks, for consenting in advance to the existence of such a nuisance in its streets.

*Landau* v. *City of New York,* 93 App. Div. 613, reversed.

(Argued November 21, 1904; decided December 13, 1904.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 27, 1904, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles Steckler* and *Levin L. Brown* for appellant. The use of one of the principal public thoroughfares of the American metropolis on the occasion in question for the exhibition of the dangerous fireworks display constituted, in and of itself, a public nuisance. (*Speir* v. *City of Brooklyn*, 139 N. Y. 6 ; 2 S. & R. on Neg. [5th ed.] § 688; *Jenne* v. *Sutton*, 43 N. J. L. 257; *Heeg* v. *Licht*, 80 N. Y. 579.) The resolution of the mayor and the board of aldermen of the defendant, adopted in October, 1902, renders the defendant liable as a party participant in the fireworks display in question. (*Speir* v. *City of Brooklyn*, 139 N. Y. 12 ; *Winne* v. *N. F. Ins. Co.*, 91 N. Y. 185 ; *Gillet* v. *Bank of America*, 160 N. Y. 555 ; *Marshall* v. *C. T. M. A. Assn.*, 170 N. Y. 438; *Miller* v. *H. & S. J. R. R. Co.*, 90 N. Y. 430.) The rule establishing the defendant's liability for the acts complained of is well settled. (*Speir* v. *City of Brooklyn*, 139 N. Y. 6; *Cohen* v. *Mayor, etc.*, 113 N. Y. 6 ; *Stanley* v. *Davenport*, 54 Iowa, 463 ; *Cohen* v. *City of New York*, 113 N. Y. 521 ; *Farley* v. *City of New York*, 152 N. Y. 222 ; *Little* v. *City of Madison*, 42 Wis. 643 ; *Simmons* v. *Everson*, 124 N. Y. 319 ; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136 ; *Chapman* v. *City of Rochester*, 110 N. Y. 273 ; *Stoddard* v. *Vil. of Saratoga Springs*, 127 N. Y. 261 ; *Hill* v. *Mayor, etc.*, 139 N. Y. 495 ; *Sullivan* v. *McManus*, 19 App. Div. 167 ; *Martin* v. *Mayor, etc.*, 140 N. Y. 207.) Even if the resolution of October, 1902, was not a permit accorded by the legislative power of the city for the fireworks display in question, yet the defendant cannot escape liability, inasmuch as it was

guilty of bad faith in passing the said resolution in the midst of a political campaign. (1 S. & R. on Neg. [5th ed.] § 262; *Atwater* v. *Trustees, etc.*, 124 N. Y. 602; *Hardy* v. *City of Brooklyn*, 90 N. Y. 440; *Cain* v. *City of Syracuse*, 95 N. Y. 83.) The defendant is also liable because of its neglect to perform its duty to keep its public street in a safe condition and in permitting and supervising the exhibition of the dangerous fireworks display thereon. (*Mayor, etc.*, v. *Furze*, 3 Hill, 612; *Conrad* v. *Trustees of Ithaca*, 16 N. Y. 158; *Requa* v. *City of Rochester*, 45 N. Y. 129; *Barnes* v. *District of Columbia*, 91 U. S. 540; *Hutson* v. *Mayor, etc.*, 9 N. Y. 163; *Davenport* v. *Ruckman*, 37 N. Y. 568; *Hume* v. *Mayor, etc.*, 74 N. Y. 264; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 271; *Rehberg* v. *Mayor, etc.*, 91 N. Y. 144; *Norristown* v. *Mayor, etc.*, 67 Penn. St. 355; *Donaldson* v. *City of Boston*, 82 Mass. 50.)

*John J. Delany*, Corporation Counsel (*Theodore Connoly* and *Terence J. Farley* of counsel), for respondent. A municipal corporation is not liable for the non-exercise of its discretionary powers in the regulation of the manufacture or use of fireworks, nor for the manner in which, in good faith, it exercises such powers. (12 Am. & Eng. Ency. of Law [2d ed.] 517; Dillon on Mun. Corp. [4th ed.], § 950; Fiero on Torts, 126; 1 S. & R. on Neg. [5th ed.] 262; Williams on Mun. Corp. 12; *Leonard* v. *Hornellsville*, 41 App. Div. 106; *Griffin* v. *Mayor, etc.*, 9 N. Y. 456; *Lorillard* v. *Monroe*, 11 N. Y. 392; *Coonley* v. *City of Albany*, 132 N. Y. 145; *Stilwell* v. *Mayor, etc.*, 17 J. & S. 360; 96 N. Y. 649; *Levy* v. *Mayor, etc.*, 1 Sandf. 465; *Fifield* v. *Phœnix*, 36 Pac. Rep. 916; *Rivers* v. *City of Augusta*, 65 Ga. 376; *Hines* v. *Charlotte*, 72 Mich. 278; *Moran* v. *P. P. C. Co.*, 134 Mo. 641.) When a general authority is given to a municipal corporation, to be exercised through its proper legislative officers, to pass ordinances regulating the use of fireworks, it is thereby left entirely to the discretion of those authorities to determine what ordinances are proper for that purpose. Hence it has

been held that a municipal corporation is not liable for omitting to enact ordinances, as this is not an actionable breach of corporate duty. Neither can a municipal liability be predicated upon the temporary suspension of an ordinance passed pursuant to a discretionary power. ( *Wilmington* v. *Vandegraft,* 1 Marv. [Del.] 5 ; *Wheeler* v. *Plymouth,* 116 Ind. 158 ; *McDade* v. *Chester,* 117 Penn. St. 414 ; *Kelley* v. *Milwaukee,* 18 Wis. 83 ; *Hill* v. *Board of Aldermen of Charlotte,* 72 N. C. 55 ; *Fifield* v. *Phœnix,* 36 Pac. Rep. 916 ; *Rivers* v. *Augusta,* 65 Ga. 376 ; *Tarbutten* v. *Town of Tennile,* 110 Ga. 90.) The suspension of the ordinances relating to the discharge of fireworks " so far as they may apply to meetings and parades of political parties or associations during the campaign of 1902," was not tantamount to the issuance of a license or permit by the board of aldermen to discharge fireworks at meetings and parades of political parties or associations during the same period. ( *Cohen* v. *Mayor, etc.,* 113 N. Y. 532 ; *Speir* v. *City of Brooklyn,* 139 N. Y. 6 ; *Leonard* v. *City of Hornellsville,* 41 App. Div. 106 ; *Cain* v. *City of Syracuse,* 29 Hun, 105 ; *Howard* v. *City of Brooklyn,* 39 App. Div. 217 ; *Costich* v. *City of Rochester,* 68 App. Div. 623 ; Tiedeman on Mun. Corp. § 927 ; *Norristown* v. *Fitzpatrick,* 94 Penn. St. 121.)

VANN, J. The question presented by this appeal involves the liability of the defendant for an explosion of fireworks, which occurred on Madison avenue, adjoining Madison square, on the evening of election day, November 4th, 1902, whereby eighteen persons were killed, including the plaintiff's intestate, and about two hundred injured.

The board of aldermen of the city of New York have power to " prevent encroachments upon and obstruction to the streets, and to authorize and require their removal by the proper officers." They " shall not have power," as the charter expressly provides, " to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the

erection or repairing of a building on a lot opposite the same." (Revised Charter, L. 1901, ch. 446, § 50.) They are authorized to pass ordinances for various purposes, and, among others, " in relation to the use of guns, pistols, firearms, fire-crackers, fireworks and detonating works of all descriptions." (Id. § 49.) Pursuant to this authority sections 718 and 719 of the revised ordinances were passed, which provide in substance that no person shall fire, discharge or set off fireworks of any description within the limits of the city, under a penalty named for each violation.

In October, 1902, while these ordinances were in force, the board of aldermen adopted, and on the 27th of the same month the mayor approved, the following resolution : " *Resolved*, that the ordinances relating to the discharge of fireworks in the city of New York be and the same are hereby suspended so far as they may apply to meetings and parades of political parties or associations during the campaign of 1902; such suspension, however, to continue only until November 10th, 1902, and be subject to such restrictions and safeguards as the police department may determine as necessary."

On the 27th of October, 1902, a copy of this resolution was sent by the city clerk to the police commissioner and by him to all precincts and squads of the police department throughout the city, with a notice, officially signed, stating that " the following copy of a resolution of the board of aldermen is transmitted to you for your information and guidance."

The National Association of Democratic Clubs, a political organization, had a parade on the evening of November 4th, 1902, and its officers arranged to have a display of fireworks on Madison avenue between 23rd and 25th streets in connection therewith. Madison avenue at this point is a wide street, bounded on the west by Madison square, a park of seven acres, where, as well as in the adjoining streets, 75,000 people assembled to receive the election returns and witness the parade. They stood closely crowded in the park and on both sides of Madison avenue. The fireworks, consisting of mortars, bombs, rockets and the like, were arranged in six

parallel rows in the middle and on the west side of the avenue, commencing about twelve feet from the curb. A police sergeant testified that they filled the middle of Madison avenue from 24th to 25th street. The bombs were fired from mortars made of steel tubing, and were of a kind that had been frequently used before, without serious results, so far as appeared. The fireworks were placed in the street in the presence of the police, who had been assigned to duty in the locality to the number of several hundred owing to the large crowd that was expected. While they did not superintend the arrangement of the fireworks in the street, they made no attempt to prevent it owing to the resolution of the board of aldermen.

Between nine and ten o'clock in the evening, as the parade was approaching Madison square, where thousands of people had assembled, some of the fireworks exploded from a cause not disclosed by the evidence, and the plaintiff's intestate, a young man, about nineteen years of age, was killed. This action was brought by the administrator of his estate to recover the damages caused by his death, and the complaint is adapted to the theory of either negligence or nuisance. When first tried there was a verdict for the plaintiff, but the judgment was reversed on appeal by the Appellate Division. (90 App. Div. 50.) Upon the second trial the plaintiff was nonsuited and the Appellate Division affirmed by a divided vote, whereupon he appealed to this court.

The law upon the subject of municipal liability for an explosion of fireworks in a public street varies radically in different jurisdictions, owing possibly to the presence or absence of large cities therein. In certain states the city is held not liable even when express permission is given by the common council, or pursuant to its authority. (*Hill* v. *Board of Aldermen,* 72 N. C. 55 ; *Fifield* v. *Common Council,* 24 L. R. A. [Ariz.] 430.)

The law in our own state was established the other way by a decision of this court made upon careful consideration, after full argument by distinguished counsel, who cited the perti-

nent authorities from all the states.   (*Speir* v. *City of Brooklyn*, 139 N. Y. 6.)

In that case it appeared that an ordinance of the common council of the city of Brooklyn after prohibiting the discharge of fireworks within the city limits, provided that it should not extend " to any fireworks exhibited by order of the common council, or by any exhibitor, who shall be authorized by a permit from the mayor to exhibit the same for public amusement." There was a display of fireworks of considerable magnitude at the junction of two narrow streets completely built upon, which was managed by private persons, under a permit obtained from the mayor and it resulted in the destruction of the plaintiff's house by fire. Under these circumstances "in view of the place, the danger involved and the occasion," it was held that " the transaction was an unreasonable, unwarranted and unlawful use of the streets, exposing persons and property to injury and was properly found to constitute a public nuisance." It was further held that as the permit was in fact authorized by an ordinance of the common council regulating a matter within its jurisdiction, the city was liable although the particular act authorized was unlawful. So it was decided in another case that a municipal corporation is liable for the consequences of an unlawful use of its streets, sanctioned by its permit. (*Cohen* v. *Mayor, etc., of N. Y.*, 113 N. Y. 532.) The only effect of such a permit is to make the city liable jointly with the licensee. (*Stoddard* v. *Village of Saratoga Springs*, 127 N. Y. 261; *Arthur* v. *City of Cohoes*, 56 Hun, 36; 134 N. Y. 589.)

While a municipal corporation is not liable for the failure to pass ordinances prohibiting the discharge of fireworks in the public streets, it is bound to exercise due care to keep its streets in a safe condition and is liable for permitting dangerous obstructions or nuisances therein. If an ordinance is passed in relation to the subject and it is not enforced, or is subsequently repealed, there is no liability for the repeal, or for the mere failure to enforce, but still the duty remains as to obstructions and nuisances. That duty never ceases and

it cannot be avoided by the passing of ordinances or the failure to pass them.

There is a distinction, well recognized by law, between the discharge of fireworks upon private property and in a public highway.   There is also a distinction in this regard between highways, depending on their location, the extent of the traffic upon them and the danger involved in case of accident.   Fireworks in certain streets may or may not be a nuisance, according to the circumstances, which usually present a question of fact.   In the case now before us we have to do with a crowded street, near the center of the largest city on the continent, "where any misadventure in managing the discharge would be likely to result in injury to persons or property."

Fireworks exhibited on an extensive scale in a great thoroughfare, in the midst of a large city, where a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact.   This was so adjudged in the *Speir* case, which is controlling in principle. While such displays are sometimes tolerated, they are not authorized, and whoever is responsible for them must run the risk of liability for the consequences, so far as they result in injury to person or property.   (*Conklin* v. *Thompson*, 29 Barb. 218; *Jenne* v. *Sutton*, 43 N. J. Law, 257; *Little* v. *City of Madison*, 42 Wis. 643.)

If the resolution of the board of aldermen was in substance and effect a license, or permit, which led to the exhibition in question, the city is liable for consenting in advance to the existence of a nuisance in its streets, provided a jury finds the facts as stated.   The question of liability turns primarily on the meaning of the resolution, which is claimed by the plaintiff to be a license, and by the defendant a repeal.

The resolution contemplates the display of fireworks in the streets, for it applies to the parades of political parties, which must take place in the streets, for they cannot be held anywhere else.   The ordinances were not repealed either in form or substance.   The word "repeal" does not occur in the resolution and the ordinances remain in force as to

all persons and organizations, except political parties and associations when . holding meetings or having parades. When the ordinances and the resolution are read together, as they must be in order to get at the meaning and intent, there is an absolute prohibition, with a suspension thereof as to certain associations for a limited period only. It did not apply to all persons, but to a comparatively small number and it was not for all time, but for about two weeks. If the suspension had been permanent and had applied to all persons, it might be held a repeal. It was not permanent, however, but was to continue only during the political campaign then in progress, and not beyond the early date named. It was neither total nor universal, but was in the nature of a substitute for a series of special permits to political parties until after election. While it was called a suspension, it had the effect of a permit. The limitation as to time and persons shows its real nature, for a repeal is not confined to certain individuals during a single fortnight. It was affirmative and permissive in character, because it allowed the classes named to do the prohibited acts for a limited period. The apparent intent was to grant a permit, but avoid the appearance and responsibility. The actual intent may properly be gathered from the natural and expected effect of the action of the aldermen, which was tantamount to an invitation to do what was done. Their resolution was adapted to that end and, as we think, was adopted for that purpose. No purpose for passing it is suggested other than to permit those conducting parades to set off fireworks during that particular campaign. The use of the word "suspended" was an adroit conception, but it is at war with every other word in the resolution and should be construed accordingly. Mere form is not material, for the real meaning as gathered from the entire resolution must control. The subject of the resolution was the display of fireworks in public streets, which had previously been prohibited, but was thenceforth permitted as to a limited number of persons for a limited period of time. No other intention than the one suggested can reasonably be imputed to the aldermen,

when their action is considered in connection with the circum-
stances existing at the time it was taken. The suspension as
limited is practically a license, because it is personal and tem-
porary. While the persons are not named, they are plainly
designated, and although the places are not specified, all the
streets of the city are opened to fireworks in connection with
parades. The resolution virtually authorized certain associa-
tions to discharge fireworks, with no restriction as to the
kind, during the political campaign, then near its close, but
not after the tenth of November, which shows that what
was in fact done was in contemplation. That is the natural
interpretation of the resolution and that is the way it was
interpreted by the police and by the political club to which
the fireworks belonged. As was said in the *Speir* case " when
given and communicated to the police it was understood as
preventing any police interference with the act permitted and
it had that effect." If the aldermen did not mean this, what
did they mean? What other reason was there for passing the
resolution? What was to be accomplished by it, unless it
authorized political parties to discharge fireworks during the
campaign? Why was the suspension made " subject to such
restrictions and safeguards as the police department" should
regard as necessary? This precaution throws light on the
intention. Displays of fireworks were expected as the result
of the resolution and, hence, they were placed under police
regulation. They were expected, because the resolution as
interpreted by the aldermen themselves, permitted such dis-
plays, for clearly they could not be had without permission as
it would be the duty of the police to prevent them.

As the purpose of the resolution was personal and tempo-
rary and it was made subject to the restrictions and safeguards
of the police department, we think it was a permit, and was
intended as a permit. While permission did not make the
display lawful, for the aldermen could not legalize a nuisance,
it invited and led to it, as the jury could have found. Although
the action of the board in granting the permit was beyond
their powers, still, it bound the city, because it related to the

subject of fireworks, which was within their jurisdiction. They consented to the creation of a nuisance in the streets and thus placed the city under the same liability as if they had erected the nuisance themselves. They have no more right to authorize or permit a nuisance than to create one, but if they do either, they make the city liable for the damages directly caused by their action.

The nonsuit was improperly granted, as a case was made for the jury. The judgments below should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, BARTLETT and HAIGHT, JJ., concur; O'BRIEN, J., dissents; WERNER, J., absent.

Judgments reversed, etc.