(109 App. Div. 821)

## JOHNSON v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   December 29, 1905.)

1. NUISANCE—PUBLIC NUISANCE—DEFINITION.

Anything which by its use or by its permitted existence necessarily threatens or works annoyance, harm, inconvenience. or danger to a community generally, and which, by reason of its unlawful character, may be remedied by public prosecution, is a public nuisance.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Nuisance, §§ 135–138.]

2. MUNICIPAL CORPORATIONS—UNLAWFUL USE OF HIGHWAY—INFLICTION OF PERSONAL INJURY.

Pen. Code, § 385, provides that an act which annoys or endangers the comfort, health, or safety of any considerable number of persons, or which in any way renders a considerable number of persons insecure in life or the use of property, constitutes a public nuisance. Section 666 makes it a misdemeanor for any person to operate an automobile upon a public highway within a city at a greater rate of speed than eight miles an hour, except where a greater rate of speed is permitted by ordinance. Greater New York Charter (Laws 1897, p. 21, c. 378, as amended by Laws 1901, p. 28, c. 466, § 50), authorizes the board of aldermen to regulate the speed of vehicles in the streets, and provides that the board of aldermen shall not pass any special ordinance in relation to any such matters. Section 39 of the charter (Laws 1901, p. 20, c. 466) requires every legislative act of the board of aldermen to be by ordinance or resolution, and section 38 prescribes the form of ordinances. A resolution of the board of aldermen authorized a specified automobile club to conduct speed trials on a certain highway on a certain day, and suspended ordinances regulating the speed of vehicles for that day and place. The specified highway was accordingly fenced in and guarded, many precautions against injury were taken, and on the day in question the speed trials were held. Plaintiff voluntarily attended the exhibition, and was injured by being struck by an automobile going at a high rate of speed, which, for some cause not disclosed, left the highway near the place where plaintiff was standing. *Held,* that the special resolution conferred no authority to conduct the speed trials, and they constituted a nuisance per se, and the city and every one else connected with such trials were liable for plaintiff's injuries.

3. SAME—PROXIMATE CAUSE—VIOLATION OF LAW.

The unauthorized running of an automobile at an illegal rate of speed on a public highway will as a matter of law be deemed the proximate cause of injury to a person standing near the highway, who was struck by the automobile, on its suddenly swerving in its course and leaving the highway, unless there is evidence that the accident would have happened, had the automobile not been running at an unlawful rate of speed.

4. SAME—CONTRIBUTORY NEGLIGENCE.

The fact that a person, injured by an automobile running in an illegal speed contest at an unlawful rate of speed, is a voluntary spectator of the contest, does not constitute such contributory negligence on her part as to preclude her from recovering for the injuries. in the absence of proof that she knew or had any reason to know that the contest was unlawful.

Appeal from Trial Term, Richmond County.

Action by Louise Johnson against the city of New York and others. From a judgment for plaintiff, and from orders denying a new trial, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

James D. Bell (James W. Covert, on the brief), for appellant city of New York.

Charles F. Brown, for appellant Automobile Club of America.

William W. Niles, for other appellants.

Stillman F. Kneeland (Edward B. La Fetra, on the brief), for respondent.

HIRSCHBERG, P. J.   The plaintiff has recovered a judgment for personal injuries sustained by her while she was witnessing, from abutting property, a test of the speed of automobiles upon a highway in the borough of Richmond.   The appellants against whom the judgment has been obtained are the city of New York, the Automobile Club of America, and the individual members of the racing committee of that club, under whose personal supervision the test of speed was made.   The trials of speed were had on the 31st day of May, 1902, on a public highway known as the Southside Boulevard in the borough of Richmond; the course being a certain measured mile of the highway, which had been then known as a "speedway" and used for fast driving and horse racing for about a dozen years. This portion of the boulevard had been set apart and improved for speedway purposes in 1890, under the direction of the chief engineer of highways of the borough, pursuant to a resolution of the local board, confirmed by resolution of the board of public improvements. It is located about three-quarters of a mile from the ocean, in an unsettled region, having but two houses—hotels—on the course.   A crowd of several thousand people assembled on the occasion in question to witness the contests.   The trials of speed were held on the assumed authority of a resolution adopted by the board of aldermen of the city on April 22, 1902, as follows:

"Resolved, that upon the recommendation of the local board, First district, borough of Richmond, permission be, and the same is, hereby given to the Automobile Club of America to conduct speed trials for automobiles on the Southside Boulevard, in the Fourth Ward of the borough of Richmond, on Saturday, May 31, 1902, between the hours of 11 o'clock a. m. and 4 o'clock p. m., or, in case the day be stormy, on the first clear weekday thereafter, between the same hours, and that during said hours on said day a speed of greater than eight miles per hour may be attained, to which end any and all ordinances regulating the speed of vehicles are hereby suspended, such suspensions to continue, however, only for the day and place on which the privilege herein mentioned and conveyed is exercised: and provided, further, that the said Automobile Club of America furnish all proper police protection over that part of the Southside Boulevard over which the said speed trials are to be conducted."

The precautions taken by those in charge of the speed contests to insure safety were comprehensive and extraordinary.   The surface of the roadway was smoothed and rolled.   A bridge was lowered so as to avoid a bump.   The tracks of a trolley line which crossed the course were covered up, and traffic by cars suspended at that point during the contests.   The streets and avenues crossing or intersecting the boulevard were barricaded by board fences.   Posts were placed on one side of the boulevard, and ropes strung from them along the entire course.   A telephone line was erected, and electric gongs put up, which rang continuously whenever an automobile was

running on the course. Flagmen were stationed along the course, each carrying a red flag, to warn people of the approach of an automobile. More than a hundred policemen belonging to the city force were on duty guarding the course and keeping people off it during the running of the machines. An ambulance and a hospital or emergency tent were provided, supplied with ice, medicines, and surgical appliances, and attended by physicians and trained nurses; and as an extra and final precaution, but one automobile was allowed on the course at a time, each finishing its exhibition of speed before another machine was permitted a trial.

The plaintiff was voluntarily present at the speed trials as a spectator. She came there, as she said, "to see the races." She resided about five miles from the course, and in company with her husband and another lady and gentleman drove from her home to the village of Richmond, and went thence by trolley to the boulevard. Alighting from the car on the side of the boulevard where the ropes were strung, and ascertaining that a better view of the contests could be obtained from the other side, the party lifted the ropes, passed under them, crossed the boulevard, and stationed themselves in the woods adjoining the highway. The plaintiff remained in the woods until the casualty occurred which constitutes her grievance. Many automobiles went down the course at a high rate of speed without mischance. The last, and apparently the fastest, went at the rate of about a mile a minute, a machine known as the "Baker," operated by Walter C. Baker and Edward Denzer, and just as this machine got opposite the plaintiff it left the road, ran up into the woods, and by physical contact and collision inflicted the plaintiff with the personal injuries of which she complains. The learned trial justice submitted the case to the jury upon the theory that their province was confined to an assessment of the damages. Without entering into details, it may be said that the connection of the appellants with the occurrence was such that liability, if it exists, attaches to all.

The serious question is whether they were liable as for a nuisance, per se. I think they were. The act which they committed was unlawful, and inherently dangerous to the community, and constituted a nuisance in law. A public nuisance may be defined as including anything which by its use or by its permitted existence necessarily threatens or works annoyance, harm, inconvenience, or danger to a community generally, and which, by reason of its unlawful character, may be remedied by public prosecution. Irrespective of its public or private nature a nuisance is well defined in 21 American & English Encyclopedia of Law (2d Ed.) p. 682, as:

"Literally an annoyance, and signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom."

And by section 385 of the Penal Code a public nuisance is defined as:

"A crime against the order and economy of the state, and consists in unlawfully doing an act, * * * which * * * (1) annoys, injures or en-

dangers the comfort, repose, health or safety of any considerable number of persons; or  *  *  *  (4) in any way renders a considerable number of persons insecure in life, or the use of property."

In the light of these definitions, it seems obvious that the use of a public highway in violation of law and in a manner intrinsically dangerous to the community must be a nuisance as matter of law.

By section 666 of the Penal Code it is made a misdemeanor for any person to operate an automobile upon any public highway within any city or incorporated village at a greater rate of speed than eight miles an hour, except where a greater rate of speed is permitted by the ordinance of a city. By section 50 of the Greater New York Charter in force at the time (chapter 378, p. 21, Laws 1897, as amended by chapter 466, p. 28, Laws 1901), it was provided that, subject to the Constitution and laws of the state, the board of aldermen shall have power to regulate the use of streets and sidewalks by foot passengers, and to regulate the speed at which horses shall be driven or ridden, and at which vehicles shall be propelled in the streets. But the same section provides that:

"The board of aldermen shall not pass any special ordinance in relation to any of the matters mentioned in this section. All ordinances in relation thereto shall be general ordinances which may either apply throughout the whole city or throughout specified portions thereof," etc.

By section 39 of the charter (Laws 1901, p. 20, c. 466), it is provided that every legislative act of the board of aldermen shall be by ordinance or resolution; and by section 38 it is provided that the style of ordinances shall be:

"Be it ordained by the board of aldermen of the city of New York, as follows."

The resolution under which the appellants acted was not an ordinance, and certainly was not a general ordinance. It was not couched in the style decreed by the charter. It had no general scope or operation at all. In precise and exclusive language it was and purported to be only a "permission" or "privilege" conferred upon the Automobile Club, and upon no one else, to conduct speed trials in the limited locality during the prescribed period of time. It repealed no ordinances regulating the speed of vehicles, and it could manifestly have no force or effect as against the injunction of the positive law of the state. Indeed, the claim of the appellant the city of New York, on the trial and on this appeal, is that it was wholly without sanction of law and ultra vires. Nor is there any claim that the use of the boulevard as a speedway was under any law or ordinance, while the evident assumption on the part of the appellants that local legislation was necessary to authorize the speed contests is an indication pointing to the contrary. It is true that, by subdivision 6, § 3, c. 538, p. 1315, of the Laws of 1904, it is provided that:

"Local authorities may, notwithstanding the other provisions of this section, set aside for a given time a specified public highway for speed tests or races, to be conducted under proper restrictions for the safety of the public."

But that law, not being in force at the time of the plaintiff's accident has no application and no significance, except possibly as a

legislative declaration that its subject-matter was not a part of the general law of the state prior to its enactment.

In Landau v. City of New York, 180 N. Y. 48, 72 N. E. 631, 105 Am. St. Rep. 709, a similar resolution, passed by the board of aldermen of the city of New York, was held to be in substance and effect only a license or permit. In that case the resolution purported to suspend for a limited period the city ordinances forbidding the discharge of fireworks, and under its authority explosives were discharged upon a public street in the presence of an immense throng in the very center of the city life, to the injury of the plaintiff. It was held that although the resolution did not, as in this case, expressly confer upon any one alone the privilege of violating the law, but conferred it generally upon political parties and associations during a pending campaign, it was tantamount to a municipal invitation to do what was done, and should be regarded in law as the granting of an unlawful permit for that purpose. The court refrained from a determination of the vexed question whether the act done under the unauthorized permit was a nuisance as matter of law, saying (page 55 of 180 N. Y., and page 633 of 72 N. E. [105 Am. St. Rep. 709]) that:

"Fireworks in certain streets may or may not be a nuisance, according to the circumstances, which usually present a question of fact. * * * Fireworks exhibited on an extensive scale in a great thoroughfare, in the midst of a large city, where a vast multitude of people is assembled, if not a nuisance as matter of law, may properly be found such as matter of fact."

There is an essential difference, however, between the permit granted in that case and the one granted herein. The permit there did not, so far as appears, transgress any general state law or assume to authorize the commission of a criminal offense. The entire control of the question of discharging fireworks within the municipal jurisdiction was vested by charter in the local authority, and there was no element of criminality involved in the action of the licensees beyond the violation of city ordinances, which the city itself had assumed to suspend for their personal benefit and to render temporarily inoperative as to the special class of privileged offenders.

I do not overlook the fact that what was done in this case might have been legalized, in part at least, by the passage of a proper general ordinance. It may well be conceded that no more suitable place could have been found in the city for the exhibition of unlimited speed than the remote and isolated spot which was chosen, and that no greater care or caution could be reasonably expected than were exercised by the appellants. That care and caution may be fairly regarded as the exercise of the utmost vigilance of which the human mind is capable, but it was displayed in the performance of a criminal act. The evidence is harmonious and undisputed, leaving no controverted question of fact for the solution of practical men. All the appellants contributed to the act by personal control and supervision, by the expenditure of both private and city money in its accomplishment, and even by the aid of city officials in various departments in knowing executive administration. What was done under the resolution of the board of aldermen must be regarded in the light of the undisputed proof as being the very thing which was designed

and contemplated by the parties. A portion of a public street in defiance of public penal law was practically boxed up for the time being, for the exclusive use of a single private club, to the exclusion of the general public, and racing machines of minimum weight and maximum power were propelled at unlimited speed under conditions which indicated that those in charge fully appreciated the fact that danger to human life was imminent, and which the sequel demonstrated were, in the extreme of caution, still incompatible with the safety, not only of those who might chance to be in the invaded highway, but even of persons intrenched within the vantage of neighboring private property.

The city is liable for the consequences of the unauthorized act of the board of aldermen. The subject-matter of the resolution was within the jurisdiction of the board, and it had ample power to regulate and control the use of the highway within lawful limitations. As was said in Speir v. City of Brooklyn, 139 N. Y. 6, 12, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664:

"The ordinances passed were not ultra vires in the sense that it was not within the power or authority of the corporation to act in reference to the subject under any circumstances. See Dillon on Mun. Corp. § 963 et seq. It is the settled doctrine of the courts that a municipality is not bound merely by the assent of its executive officers to wrongful acts of third persons, nor could the mayor bind the city by a permit, for the granting of which he had no color of authority from the common council, and which was not within the general scope of his authority. Thayer v. City of Boston, 19 Pick. 511, 31 Am. Dec. 157. If the permit was in fact authorized by the ordinance, the city would, as we conceive, be liable, although the particular act authorized was wrongful. For a mistake in the exercise of its powers, or by acting in excess of its powers upon a subject within its jurisdiction, whereby third persons sustain an injury, there seems to be no reason in justice which should deny the injured party reparation. The common council is the governing body. It represents the corporation, and its acts are the acts of the corporation when they relate to subjects over which the corporation has jurisdiction. It is true that the power to pass ordinances and to regulate the use of fireworks did not embrace a power to authorize or legalize nuisances. But, if the ordinance transcended the power of the common council in this respect, the misconstruction of the common council of the extent of its powers in dealing with the subject, which was concededly within its power of regulation, does not, we think, within any just view of municipal exemption from the consequences of unauthorized and wrongful acts of the governing body, exempt the city from liability."

See, to the same general effect, Cohen v. Mayor, etc., of New York, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506.

It is urged by the learned counsel for the appellant the Automobile Club of America that the plaintiff's injuries were not the proximate result of the excessive speeding; that there was no necessary causal connection between the conduct of the contests and the erratic movements of the Baker machine; and that, if there was, it presented a question of fact for the jury, and not one of law for the court. The same claim might be made with equal force, had the plaintiff been run down in the highway. It is obvious that an automobile traveling at only 8 miles an hour could run over a pedestrian, but that fact would be no defense to a wrongdoer speeding at the rate of 60 miles an hour, on a theory that no causal connection existed between the speed

and the injury. There was no direct evidence of the reason why the Baker machine left the course and went into the woods, and the parties have assumed upon the argument that those who were driving it in some manner lost control of it. The two men who were operating the machine were taken from it unhurt, and neither was called to testify. In fact, the appellants made no attempt to ascribe the accident to an innocent or lawful agency, or to prove that it occurred from the negligence of these men or either of them. The restrictions of law against high speed are in the interests of safety, and indicate that in law an excessive speed is regarded as conducive of danger. I think that the plaintiff established a prima facie case on this branch when she proved the violation of the law and the coincident disaster, and that, in the absence of all exculpatory proof tending to show that the accident would have been as likely to occur had the statutory rate of 8 miles per hour been maintained, there was no disputed fact for submission to the jury. Whether the machine that did the mischief was in incompetent hands or defective in construction, of which there is no proof, and such incompetency or defect constituted a proximate cause of the accident, the illegal rate of speed was clearly an efficient proximate cause, in the absence of all proof to the contrary, which rendered those liable who were responsible for it. Ring v. City of Cohoes, 77 N. Y. 83, 33 Am. Rep. 574; Ivory v. Town of Deerpark, 116 N. Y. 476, 483, 22 N. E. 1080.

It seems clear to me that any other view would necessarily impose upon the plaintiff the burden of proving affirmatively, as a part of her cause of action, that the men in charge of the machine would not have lost control of it if it had been running at the rate of only 8 miles an hour, instead of 60. This is something which neither she nor the jury could know, and it would be unreasonable to impose upon a plaintiff the establishment of a fact which rests wholly upon hypothetical conjecture. Had the accident resulted from the uncontrolled or uncontrollable movements of a machine traveling at the lawful rate, the plaintiff would have been required, of course, to prove negligence affirmatively; but happening, as it did, in the commission of a criminal offense, the burden was on the perpetrators to prove, if it be possibly provable, that it would have happened just the same, had they obeyed the law, instead of violating it. What the plaintiff need not prove, in order to make out a case, need not be submitted to a jury for determination.

The fact that the plaintiff was a voluntary spectator of the contests does not deprive her of the right to recover. A different question might have been presented, had she stationed herself upon the highway, where the hazard was obvious; but where she was she had no reason to apprehend danger. Similar immunity may not be accorded to the defendants, who were the active wrongdoers, and as such subject to the rule referred to in Landau v. City of New York, supra, in relation to accidents from unauthorized public displays, that:

"Whoever is responsible for them must run the risk of liability for the consequences, so far as they result in injury to person or property."

It is possible that a different view might be taken, had it appeared that the plaintiff knew or had any reason to know the unlawful nature

of the contests. There is, however, nothing in the case tending to indicate that she was aware that they were not being conducted under the operation and sanction of a general ordinance, or by virtue of a legal and valid permit. She did not participate in the contests in any way, and her mere presence in the woods cannot be regarded in a legal sense as contributing to the accident, assuming for the moment that freedom from contributory negligence as an essential factor in her case.

The judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.