(119 App. Div. 743)

## PEOPLE v. STACY.

(Supreme Court, Appellate Division, Third Department. May 8, 1907.)

1. HOMICIDE—MANSLAUGHTER—EVIDENCE—SUFFICIENCY.

    On a trial for homicide, evidence *held* to justify a conviction of manslaughter in the first degree.

**2. SAME—DYING DECLARATIONS—ADMISSIBILITY.**

On a trial for homicide, decedent died within a fraction of a day after having made declarations with respect to the manner in which her injuries were received. She had disposed of her only child in expectation of her approaching death, and had received the last rites of her church in the belief that death was imminent. Her attending physician held out some hope to her that she might ultimately recover. *Held*, that the court correctly received the declarations as her dying declarations.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 429–437.]

**3. SAME—MANSLAUGHTER—INDICTMENT—SUFFICIENCY.**

An indictment alleging that accused wrongfully and feloniously, but without design to kill, with his fists and feet assaulted, struck, and kicked decedent, thereby inflicting mortal wounds, from the effects of which decedent died, whereby accused committed manslaughter in the first degree, charges manslaughter in the first degree, as defined by Pen. Code, § 189, defining homicide as manslaughter in the first degree when committed without a design to effect death, either by a person engaged in committing a misdemeanor affecting the person or property of the person killed, or in the heat of passion, etc.; for the indictment shows that accused was engaged in committing either a felony or a misdemeanor on the person of decedent, within sections 5 and 6, defining a felony and misdemeanor, and sections 218, 219, 221, and 222, punishing assaults, especially in view of Code Cr. Proc. §§ 282–285, 684, declaring that an indictment containing averments sufficient to inform accused of the nature of the accusation against him shall be good, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 231, 235.]

Appeal from Franklin County Court.

Fred Stacy was convicted of manslaughter in the first degree, and he appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Charles A. Burke, for appellant.

Borden H. Main, for respondent.

CHESTER, J. The defendant and his wife, Stella Stacy, prior to Sunday, October 29, 1905, were living together with their child, a little girl then about 3 years of age, at Lake Titus, in the town of Malone, Franklin county, in a small farmhouse near the highway. The wife had been away from home on that day. On her return about 5 o'clock in the afternoon she stopped for a short time at the house of one Benware, a neighbor who lived about 50 rods distant near the same highway. A son of Benware testified that she then went on to the house where she lived, and in five or six minutes he saw her coming away from her house crying and screaming and leading her child by the hand; that the defendant stood near the corner of his house, calling her vile names, and told her that she had been running for five years, and that he had given her all the running she wanted for a while. A witness who had boarded with the Stacys, but who was absent at the time, testified that he returned on November 1st, and that two days thereafter he had a conversation with the defendant about his wife and his treatment of her; that he asked him where she was, and he said she went away, and he did not care if she did not come back, and that the treatment she got was good enough for her. On that

Sunday night the defendant's wife and little girl remained overnight with his mother, who lived about a mile distant from him. The next morning, in the absence of the defendant, the deceased returned to her home and got some clothing for herself and her child, and then went to Malone, about eight miles distant, riding most of the way with her child on a load of lumber. She died at her father's house there on the 14th day of November, 1905, with peritonitis in the lower part of the abdomen on the right side, caused, in the opinion of the phyisican who attended her and by those who made a post mortem examination of the body, by external violence. There were several marks of bruises on different parts of the body, two of them on the right groin about two inches in diameter and over the seat of the inflammation in the peritoneum. For several days after the deceased reached Malone she was up and about, but walked lame and in a stooping position, bent down on the right side, and held herself with her hand, and groaned, and was pale. About the eighth day she called a physician, who attended her daily thereafter until the day before she died. The physician who attended her told her she was in a very serious condition, but he held out some hope to her that she might recover. She grew worse, however, daily until she died. She said repeatedly to different persons on the Sunday preceding her death that she knew she had got to die, and on that day she sent for a Catholic priest, and he administered to her the last rites of her church. She also gave her child to her father, and arranged with him to take care of it after her death. On that day she said, with respect to the manner in which her injuries were received, that Fred Stacy, her husband, kicked her in the stomach after she was down with the heel of his shoe, and that he kicked her in the side and stamped on her with his shoe after she was down. The same declaration in substance was made by her to several persons on that day, to some of whom she showed the bruises on her person, which she said were caused by her husband. The defendant denied that he assaulted his wife in any way on the day in question, or that he called her names. He was arrested on the 13th or 14th day of November, and before that, and after she left him, he had done nothing to ascertain where she was, and he had not heard from her or the child during that time. The physician who attended the deceased testified that the peritonitis which caused the death commenced in the lower part of the abdomen about opposite the external bruise. This was corroborated by the two physicians who aided him in making the post mortem examination of the body. These physicians also agree that peritonitis caused by external violence is much less rapid in its development than when caused by internal infection. They also testified that all the vital organs of the deceased were in a normal condition. From this brief summary of the facts, all of which the jury were justified in finding from the evidence, their verdict against the defendant, notwithstanding his denial of the assault, was fully warranted, and is abundantly sustained by the testimony.

The appellant urges that the evidence of the declarations of the deceased were improperly received. We think a sufficient foundation was laid to justify the receipt of this evidence. It is the condition of

mind of the declarant which determines the question of the admissibility
of this class of proof. The evidence clearly indicates that she believed
that her death was near at hand and that she had no hope of recovery.
The fact that her attending physician held out some hope to her that
she might ultimately recover will not render her declarations inadmis-
sible, if the court can see that she had given up all hope of recovery.
Elliott on Evidence, § 348. And it was for the court to determine,
from all the circumstances in the case, whether the declarations were
made by the deceased under the conviction of approaching and imminent
death. People v. Smith, 104 N. Y. 491, 10 N. E. 873, 58 Am. Rep.
537. She died within a fraction of a day after having made the dec-
larations which the court received. She had disposed of her only
child in expectation of her approaching death, and she had received the
last rites of her church in the belief that death was imminent. The court,
therefore, we think, correctly received her declarations in evidence.

After the verdict there was a motion made to arrest judgment under
section 321 of the Code of Criminal Procedure. The ground principal-
ly urged in support thereof was that the indictment did not state facts
sufficient to constitute a crime. The court denied the motion, and
the defendant excepted. The indictment followed the form prescribed
in section 276 of the Code of Criminal Procedure. By it the grand
jury in express terms accused the defendant of the crime of manslaugh-
ter in the first degree and states that such crime was committed as fol-
lows:

"The said Fred Stacy, at the town of Malone, in the county of Franklin, in
the state of New York, on the 29th day of October, 1905, did wrongfully, un-
lawfully, and feloniously, but without design to kill, with force and arms, with
his fists and feet, assault, strike, and kick one Stella Stacy upon her spine,
abdomen, and side, thereby inflicting serious, grievous, and mortal wounds
and injuries upon her, the said Stella Stacy, from the effects of which said
wounds and injuries the said Stella Stacy thereafter, on the 14th day of No-
vember, 1905, died, whereby the said Fred Stacy did commit the crime of man-
slaughter in the first degree, against the form of the statute in such case
made and provided, and against the peace of the people of the state of New
York, and their dignity."

It is urged that this indictment does not charge that the defend-
ant committed an act which caused the death while engaged in commit-
ting a misdemeanor; nor does it allege that the act was committed in
the heat of passion, or by means of a dangerous weapon. Under the
liberal rules now existing for the construction of indictments, we think
this one must be sustained. Code Cr. Proc. §§ 282–285, 684. Under
these rules an indictment must be held good if it contains sufficient
averments to inform the defendant of the nature of the accusation
against him and enables him to prepare his defense, and when the rec-
ord may be admitted as a bar to a second prosecution for the same
offense. People v. Willis, 158 N. Y. 392, 53 N. E. 29. And no in-
dictment is to be held insufficient by reason of any imperfection in mat-
ter of form which does not tend to the prejudice of the substantial
rights of the defendant upon the merits. Code Cr. Proc. § 285.

Section 189 of the Penal Code defines homicide as—

"Manslaughter in the first degree, when committed without a design to effect
death, either (1) by a person engaged in committing, or attempting to commit,

a misdemeanor, affecting the person or property, either of the person killed, or of another; or (2) in the heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon."

There is no allegation that this crime was committed in the heat of passion or by means of a dangerous weapon, and therefore it was evidently not intended to lay the charge against the defendant under subdivision 2 of this section. Nor does this indictment in express terms allege that the defendant was engaged at the time in committing or attempting to commit a misdemeanor affecting the person who was killed; but the facts stated in the indictment show that he was engaged in committing an assault upon her. If it were not for the allegations that the wounds were mortal, and that she died from the effects of the wounds and injuries which the defendant inflicted upon her, the charge would amount to one of assault in the second degree under paragraph 3 of section 218 of the Penal Code, or to an assault in the third degree under section 219 of such Code. An assault in the second degree may be punishable by imprisonment in a state's prison (Pen. Code, § 221) and is therefore a felony (Id. § 5). An assault in the third degree may be punishable by imprisonment (Id. § 222) in a penitentiary or a county jail (Id. § 15), and is a misdemeanor (Id. § 6; People ex rel. Devoe v. Kelly, 97 N. Y. 212). Under an indictment for assault in the second degree the jury would have the right to convict the defendant of that crime, or of an assault in the third degree, which is a lesser degree of the same crime. Pen. Code, § 35. The facts stated in the indictment show clearly that the defendant was engaged in committing either a felony or a misdemeanor upon the person of his wife. One or the other of these conclusions necessarily follow from the facts stated, and it was unnecessary, therefore, to allege the conclusions in addition to the facts from which the conclusions are drawn.

Nor is it apparent how any substantial rights of the defendant have been prejudiced by the failure to allege the conclusion that the defendant was engaged either in the commission of a felony or of a misdemeanor. It is alleged that the defendant did unlawfully and feloniously, but without design to kill, with his fists and feet, assault, strike, and kick one Stella Stacy upon her abdomen and side, thereby inflicting mortal wounds and injuries upon her, from the effects of which she soon thereafter died. The case appears to be within the authority of People v. McKeon, 31 Hun, 449, where it was held that a defendant was properly convicted of the crime of manslaughter in the first degree when the only misdemeanor he was engaged in committing at the time was the assault and battery upon the person of the deceased, which produced her death. While that case was decided under the definition of manslaughter contained in the Revised Statutes (2 Rev. St. [1st Ed.] part 4, c. 1, tit. 2, § 6), and not under the definition contained in the Penal Code, yet there is no essential difference between the two cases in principle. The contrary doctrine was held by a divided court in the case of People v. Butler, 3 Parker's Cr. R. 377; but the Court of Appeals, in the case of Buel v. People, 78 N. Y. 500, 34 Am. Rep. 555, states that the doctrine of that case has been repudiated

by many authorities, which are there cited. See, also, the report of the Buel Case at the General Term in 18 Hun, 487.

We think that, under the authorities and for the reasons stated, the indictment sufficiently charges the defendant with the crime of manslaughter in the first degree within the statutory definition of that crime, and that the motion in arrest of judgment was, therefore, properly. denied.

The judgment and conviction should be affirmed. All concur.