### PEOPLE v. DARRAGH.

(Supreme Court, Appellate Division, First Department. December 30, 1910.)

1. INDICTMENT AND INFORMATION (§ 110*)—FIRST DEGREE MURDER—COMMON-LAW FORM.

An indictment for murder in the first degree in the common-law form is sufficient notwithstanding the statute.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289–294; Dec. Dig. § 110.*]

2. INDICTMENT AND INFORMATION (§ 110*)—STATUTORY OFFENSES—ENHANCED PUNISHMENT.

The rule that an indictment must bring the offense within the words of the statute declaring it is applicable in its strict terms only to cases where the offense is created by statute, or where the punishment has been increased, and the pleader seeks to bring the offender within the enhanced punishment.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 289–294; Dec. Dig. § 110.*]

3. INDICTMENT AND INFORMATION (§ 189*)—CONVICTION OF INCLUDED OFFENSES.

Under an indictment charging murder alone, the prisoner may be convicted of manslaughter.

· [Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. § 593; Dec. Dig. § 189.*]

4. HOMICIDE (§ 77*) — AUTOMOBILES — NEGLIGENT OPERATION — FIRST-DEGREE MANSLAUGHTER—"MANSLAUGHTER IN FIRST DEGREE."

Penal Law (Consol. Laws, c. 40) § 1050, declares that homicide, when not excusable or justifiable, is manslaughter in the first degree when committed without design to effect death by a person engaged in committing or attempting to commit a misdemeanor affecting the person or property, either of the person killed or of another: Defendant, while testing a new 60 horse power automobile on Morningside Drive in New York City at a speed of 35 to 40 miles an hour, in violation of Highway Law (Consol. Laws, c. 25) § 291, limiting the speed there to 10 miles an hour, and making a violation thereof a misdemeanor, came upon boys playing in the street, among whom was deceased. Deceased was hit by the car, and carried about 150 feet before he fell to the ground, with injuries from which he died the same evening. *Held*, that accused was properly convicted of manslaughter in the first degree.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 103 ; Dec. Dig. § 77.* For other definitions, see Words and Phrases, vol. 5, p. 4342.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. Homicide (§ 77*)—Manslaughter—Automobiles—Speeding—Nuisance.

    *Held*, also, that the court properly submitted to the jury whether defendant was committing a nuisance at the time of the accident, under Penal Law (Consol. Laws, c. 40) § 1530, describing a nuisance as an act which (1) endangers the safety of any considerable number of persons, or (3) unlawfully tends to render dangerous for passage a public street, or (4) in any way renders a considerable number of persons insecure in life or property, and section 43, making any person, who wrongfully or willfully commits any act which seriously injures the person of another, or seriously endangers the public peace or health, for which no other punishment is expressly prescribed, guilty of a misdemeanor.

    [Ed. Note.—For other cases, see Homicide, Cent. Dig. § 103; Dec. Dig. § 77.*]

6. Criminal Law (§ 1030*)—Appeal—Review.

    Where, in a prosecution for homicide, there was no motion to take the case from the jury or to discharge the prisoner, and there were no exceptions to the charge, nor any request to take any degree of murder or manslaughter from the jury, defendant could not object on appeal that a verdict of manslaughter in the first degree could not stand, because, if guilty at all, it was only guilty of manslaughter in the second degree.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2619–2621, 2629, 2632; Dec. Dig. § 1030.*]

    McLaughlin, J, dissenting.

Appeal from Court of General Sessions, New York County.

William Darragh was convicted of manslaughter in the first degree, and he appeals. Affirmed.

See, also, 139 App. Div. 907, 123 N. Y. Supp. 1134.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edward F. Flammer (Alfred C. Pette, on the brief), for appellant.

Charles S. Whitman, Dist. Atty. (Robert C. Taylor, of counsel), for the People.

CLARKE, J. The appellant was a chauffeur. His employer had purchased a new 60 horse-power car about the 1st of March, 1909. This car had made 65 miles an hour, and the appellant had, according to his own testimony, driven it at the rate of 60 miles an hour the day before the occurrence here under consideration.

In the early evening of Saturday, March 27th, the appellant took the car, which at that time was equipped with only two racing seats, the body having been taken off and left at the garage, and started out to test it, to try out the car on some hill, as he wanted to run it up a grade if he could. He took a young man of his acquaintance with him, and at about 7:45 in the evening started up Morningside Drive from 110th street. Morningside Drive going north has an upgrade to a point between 116th and 117th streets, from which point the grade drops toward the north. At 118th street some boys were playing a game called "corner tag." Among them was Ingovaard Trimble, 13 years of age, 5 feet 4 inches in height, well built, and in good health. He was in the roadway near the southeast corner of 118th street when he was hit by the car, and carried about 150 feet

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

before he fell to the ground. He was picked up and taken to a hos-- pital. He was found to have received a fracture at the base of the skull, a fracture of two ribs, a compound fracture of both bones of the leg, and many bruises and other wounds, from the effect of which he died at 9 o'clock the same evening.

The appellant, although he knew he had hit the boy and thought he had killed him, did not stop to investigate, but fled at full speed, and, by a devious route, returned to his garage, where, finding the glass in one lamp smashed and the iron mudguard on the left side of the front wheel bent, he repaired these damages, reported to his employer the next day that the damage to the mudguard had been caused by another machine backing into it at the garage, fled the city on Monday, and was subsequently arrested in Texas and brought back to this state.

The jury could have found that the speed of the car at the time it struck the boy was from 35 to 40 miles an hour. The appellant himself testified that his speed on the upgrade which ended between 116th and 117th streets was from 24 to 25 miles on hour. He also testified that as he crossed over the north crossing of 117th street he saw the boys playing ahead of him at 118th street. His claim was that he had slowed down to 10 or 12 miles at 118th street; that, if the boy had stood still, he would have cleared him; that he suddenly ran in front of the car, and, although he swerved it into the curb and reduced speed to five miles an hour, the boy was hit in the back of the head and the wheel passed over him; that he was frightened by the crowd and put on full speed to get away; and that the boy was not carried on the machine. From the positive testimony of many eyewitnesses fixing the place where the boy was struck and where he was found upon the street, the frightful injuries received, and the damage done the car, the jury evidently rejected, as they were entitled to, the appellant's uncorroborated account of the tragedy; his companion Brown not having been produced.

The following indictment was found against him:

"The grand jury of the county of New York by this indictment accuse William Darragh of the crime of murder in the first degree committed as follows: The said William Darragh, late of the borough of Manhattan, of the city of New York in the county of New York, aforesaid, on the 27th day of March, in the year of our Lord one thousand, nine hundred and nine, in the borough and county aforesaid, with force and arms in and upon one Ingovaard Trimble, in the peace of the said people, then and there being, willfully, feloniously, and of his malice aforethought did make an assault, and a certain vehicle known as an automobile, then and there being operated, governed, and controlled by him, the said William Darragh, to, at, against and upon the said Ingovaard Trimble, then and there willfully, feloniously, and of his malice aforethought did force and drive, and him, the said Ingovaard Trimble, with the said vehicle so forced and driven, as aforesaid, then and there willfully, feloniously, and of his malice aforethought did strike, knock down, and run over, thereby giving unto him, the said Ingovaard Trimble, then and there by the means aforesaid, in and upon the head and body of him, the said Ingovaard Trimble, divers mortal wounds, bruises, contusions, and fractures, of which said mortal wounds, bruises, contusions, and fractures he, said Ingovaard Trimble, then and there died. And so the grand jury, aforesaid, do say that the said William Darragh, him, the said Ingovaard Trimble, in manner and form and by the means aforesaid, willfully, feloniously, and of his malice aforethought did

kill and murder, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

This indictment is in the common-law form. That this is sufficient, notwithstanding the statutes, was settled by People v. Enoch, 13 Wend. 159, 27 Am. Dec. 197. In that case the court said:

"The crime of murder might have been committed before the Revised Statutes from implied malice where the prisoner, while engaged in an unlawful act under the degree of felony, such as a riot or other misdemeanor, had killed another against his intention. By the third subdivision such unlawful act must now be of the degree of the felony. This is the only modification of the law of murder. The rule that the indictment should bring the offense within the words of the statute declaring it is applicable only in its strict terms to cases where the offense is created by statute, or where the punishment has been increased and the pleader seeks to bring the offender within the enhanced punishment."

In reviewing and following that case, in Fitzgerrold v. People, 37 N. Y. 413, the court said:

"The law had been then so altered by the Revised Statutes that a killing which occurred in commission of a misdemeanor simply was not murder. It would be manslaughter merely. Malice aforethought embraces a class of offenses which did not then constitute the crime of murder. The prisoner then stood indicted for an offense which might be murder and might be an inferior offense, and yet upon a general verdict of guilty and a judgment inflicting the punishment of death the Court of Errors sustained the judgment. The chancellor gave the answer which I have already cited, 'that it is the duty of the court to see that a proper direction be given to the jury in point of law upon the evidence, and, if either court or jury err, the appropriate remedy must be sought.' This is equally true in the present case. * * * It has always been held to be the law that, upon an indictment charging the offense of murder and nothing else, the prisoner might be convicted of manslaughter. The same allegations in the indictment would maintain a conviction for murder, or would justify a verdict of manslaughter merely. The result depends upon the proof, the direction of the judge, and the opinion of the jury. As these elements require a conviction of the greater or minor offense, such will be the result."

See People v. Giblin, 115 N. Y. 196, 21 N. E. 1062, 4 L. R. A. 757. The present statute is section 1044 of the Penal Law (Consol. Laws, c. 40), which provides:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed * * * (2) by an act imminently dangerous to others and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual."

And it was this portion of the statute to which the attention of the jury was directed by the charge of the court in submitting to them the question whether the appellant was guilty of murder in the first degree.

The proper interpretation of this section was laid down in Darry v. People, 10 N. Y. 120. Selden, J., pointed out that "the substitution of new and original phraseology in our statute defining the crime of murder (2 Rev. St. p. 651, § 5) was the result of an effort to clear the subject of the obscurity which grew out of the inaccurate use of some of the terms of the common law," with especial reference to ex-

press and implied malice, but that the statute was nevertheless based upon the common law; and cites from 1 East's P. C. 222, § 9, the third subdivision of the general definition of homicide:

" '(3) From a general malice, or depraved inclination to mischief, fall where it may.'

"The word 'general' here used, and the last words of the sentence, leave no doubt as to the nature of the cases contemplated by this subdivision. They were cases of depraved and reckless conduct, aimed at no one in particular, but endangering indiscriminately the lives of many, and resulting in the death of one or more. If this be not clear upon the words themselves, the comments of Mr. East upon this subdivision would seem to put the matter at rest. 1 East's P. C. 231, § 18. In illustrating this subdivision, he says: 'The act must be unlawful, attended with probable serious danger, and must be done with a mischievous intent to hurt people, in order to make the killing amount to murder in these cases.' And the instances he gives are as follows: 'If a person breaking in an unruly horse willfully ride among a crowd of persons, the probable danger being great and apparent, and death ensue from the viciousness of the animal, it is murder.' Again: 'So if a man, knowing that people are passing along the street, throw a stone likely to create danger, or shoot over the house or wall, with intent to do hurt to people, and one is thereby slain, it is murder.' * * * It is clear, I think, from what has been already said that the subdivision in question does embrace those cases where an intent to take life exists, which is not directed to any particular individual, but is general and indiscriminate. The language of the subdivision, however, at the same time, shows that it was not intended to be confined to those cases, but was designed to include another class, closely akin to and almost identical with those, in which death is produced by acts putting the lives of many in jeopardy, under circumstances evincing great depravity and utter recklessness in regard to human life. For instance, a man may fire into a crowd with the view of destroying life, and he may do so, for the mere purpose of producing alarm, although at the imminent hazard, as he knows, of killing some one. Again, he may open the drawbridge of a railroad, with intent to destroy the lives of the passengers, or he may do it for the sole purpose of effecting the destruction of the property of the railroad company. The subdivision in question was intended to provide for all these and similar cases indiscriminately, putting them upon the same footing, without regard to the particular intent. The phrases 'imminently dangerous to others' and 'depraved mind, regardless of human life,' have an apt and intelligible meaning, when used in regard to such cases."

The facts alleged in the indictment and proven in the case at bar bring it within the class of cases pointed out, not only by Selden, J., but those cited from East, as sustaining the charge of murder under the subdivision of the section quoted, and particularly the illustration of the attempt to break a vicious horse in a crowded street. For purposes of pleasure and business, the motor car has to a very considerable extent supplanted the horse. The law in its growth adapts settled principles to changing circumstances. It is well settled that the same kind of acts, producing identical mischiefs, although perpetrated with different and more modern instruments, come within the ancient principles. Therefore the indictment was properly laid upon the charge of murder in the first degree.

Section 30 of the penal law provides that:

"Whenever a crime is distinguishable into degrees, the jury, if they convict the prisoner, must find the degree of the crime of which he is guilty."

The learned court in its charge defined the different degrees of murder and of manslaughter fully and submitted the question of the

degree of guilt to the jury in case they found him guilty at all. The jury returned a verdict of manslaughter in the first degree, and the appellant now asks that the judgment be reversed because if guilty at all he was only guilty of manslaughter in the second degree; that under the facts proven he could not properly be convicted of manslaughter in the first degree. There is not an exception in the case which brings up this question. He did not move for the direction of a verdict or to take any degree of murder or manslaughter from the consideration of the jury. Although he made 49 requests to charge, not one of them touched this question, and, although the court clearly left it to the jury to determine as to the degree, no exception or request in regard thereto or to any portion of the charge was made.

In People v. Huson, 187 N. Y. 97, 79 N. E. 835, defendant was indicted for manslaughter in the first degree, which is taking human life without design to effect death, but was convicted of assault in the first degree, which is an assault made with intent to effect death, or to commit a felony upon person or property. Vann, J., said:

"There was no evidence to warrant a finding that the assault was made with intent to commit a felony upon person or property. The Appellate Division reversed the judgment of the County Court, but by its amended order the reversal is certified to have been 'upon questions of law only, the facts having been examined and no error found therein.' The opinion indicates that it reversed because manslaughter negatives the idea of an intent to kill, while it is an essential element in the crime of assault in the first degree. That was a question of law, but it was not raised by any exception. No court can create an error of law by certifying that there is one, and a question of law in a criminal case prosecuted by indictment can be raised only by an exception. The Appellate Division could have reversed because the verdict was against the weight of evidence, but they did not, and we cannot. There is no exception in the record to justify the reversal. ✻ ✻ ✻ There was no motion at the close of the evidence that the court should advise an acquittal, or that the defendant should be discharged. There was no exception to the charge that the jury could convict of assault in the first degree and no request made to charge upon that subject. When the case was submitted to the jury, therefore, the defendant was in the attitude of consenting that they might pass upon the evidence and also of acquiescing in the charge that they could convict of the crime of assault in the first degree, notwithstanding that the indictment was for manslaughter in the first degree."

There was no motion in the case at bar at the close of the people's case or at the close of the whole case to take the case from the jury or to discharge the prisoner, and there are no exceptions to the charge.

Judge Vann proceeded:

"There was a motion for a new trial, but the order denying it brings up nothing for us to review. There was a motion for an arrest of judgment, but that brought up only the jurisdiction of the court over the subject of the indictment, which is not disputed, and the question whether the facts stated constitute a crime, meaning, of course, the facts stated in the indictment. People v. Meakim, 133 N. Y. 214, 219, 30 N. E. 828; Code Cr. Proc. §§ 323, 331, 467. It is not claimed that the facts stated in the indictment do not constitute a crime, although it is strenuously insisted, as the Appellate Division held, that they do not constitute the crime for which the defendant was convicted. However, when the court charged the jury that they could convict him of an assault in the first degree, notwithstanding the indictment was for manslaughter in the first degree, the defendant made no objection and took no exception. He acquiesced in that instruction, and was

apparently satisfied with it. * * * We have no power to pass upon the question of law which led the Appellate Division to reverse, because it was not raised by an exception. That learned court was in the same situation with reference to that question, although it had ample power with reference to other questions not open to us. We are thus compelled to reverse their determination because they had no power to make it."

Cited in People v. Washor, 196 N. Y. 104, 89 N. E. 441; People v. Thompson, 198 N. Y. 396, 91 N. E. 838; People v. Blake, 121 App. Div. 613, 106 N. Y. Supp. 319, affirmed 193 N. Y. 616, 86 N. E. 1129.

This court has the right to review the evidence and this we have done, and find the verdict of guilty sustained thereby, and we do not find that it is against the law or that justice requires a new trial. Section 1050 of the penal law provides that:

"Such homicide [that is, unless it is excusable or justifiable] is manslaughter in the first degree when committed without design to effect death, by a person engaged in committing or attempting to commit a misdemeanor affecting the person or property either of the person killed or of another."

At the time of the transactions in question, the highway law (chapter 25, Consol. Laws), being chapter 30, Laws 1909, was in force. By section 291 thereof it was provided that no person should operate a motor vehicle on any public highway where the territory contiguous thereto is closely built up at a greater rate than one mile in six minutes, or else where in a city or village at a greater rate than one mile in four minutes; and by section 307 it was provided that:

"The violation of any of the provisions of sections * * * two hundred and ninety-one * * * of this article * * * shall be deemed a misdemeanor, punishable by a fine not exceeding one hundred dollars for the first offense, and punishable by a fine of not less than fifty dollars or more than one hundred dollars, or imprisonment. not exceeding thirty days, or both, for a second offense, and punishable by a fine of not less than one hundred dollars and not more than two hundred and fifty dollars and imprisonment not exceeding thirty days for a third or subsequent offense."

So that at the utmost the lawful speed upon the Morningside Drive was 15 miles an hour, a violation of the restriction was declared a misdemeanor, and the appellant testified that he knew that was the speed limit, and also that he had been twice convicted and fined for speeding.

The statutes also provide: Section 43 of the penal law:

"A person who wrongfully and willfully commits any act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, or which openly outrages public decency, for which no other punishment is expressly prescribed in this chapter, is guilty of a misdemeanor."

Section 1530:

"A 'public nuisance' is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission: (1) Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; * * * or (3) unlawfully interferes with, obstructs, or tends to obstruct, or render dangerous for passage * * * a public park, square, street or highway; or (4) in any way renders a considerable number of persons insecure in life or the use of property."

In Johnson v. City, 109 App. Div. at page 825, 96 N. Y. Supp. at page 757, Hirschberg, P. J., in a case where the city authorities had allowed automobile racing upon a highway on Staten Island, after citing the statutes and the common law in regard to nuisances, said:

"In the light of these definitions, it seems obvious that the use of a public highway in violation of law and in a manner intrinsically dangerous to the community must be a nuisance as a matter of law."

And although the judgment was reversed (186 N. Y. 139, 78 N. E. 715, 116 Am. St. Rep. 545), because the jury had not been permitted to pass on the main question as a matter of fact, Cullen, C. J., said:

"Therefore the race or speed contest held by the defendants was an unlawful use and obstruction of the highway and per se a nuisance. Pen. Code, § 385, subd. 3."

In the case at bar, the court left to the jury the question of whether appellant was committing a misdemeanor or a public nuisance as a matter of fact.

So that, if the question were properly before us, it would be clear, we think, that the conviction under section 1050 of the penal law was justified because the jury by their verdict have found that the appellant was a person engaged in committing a misdemeanor affecting the person or property of the person killed or of another. If the evidence is to be credited, as it has been, this defendant, at what might well be characterized as a furious rate of speed, charged down upon a group of boys, whom he clearly saw, at a distance, placed by himself, of a full block, within which he could readily have brought the machine to an entire stop. He hit and killed one and narrowly escaped another. To hold that the misdemeanor which he was thus committing did not affect the person or property either of the person killed or of another would be a refinement of reasoning which we are not prepared to adopt. The claim that the misdemeanor referred to must be separate and apart from the act of killing is not sustained by the later cases. People v. McKeon, 31 Hun, 449; Buel v. People, 78 N. Y. 500, 34 Am. Rep. 555; People v. Stacy, 119 App. Div. 743, 104 N. Y. Supp. 615, affirmed 192 N. Y. 577, 85 N. E. 1114.

The judgment appealed from should be affirmed.

INGRAHAM, P. J., and LAUGHLIN and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). The defendant was indicted for murder in the first degree. The indictment was in the common-law form, and under it undoubtedly the prosecution could prove facts to bring the case within any of the provisions defining murder in the first degree. People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582; People v. Giblin, 115 N. Y. 196, 21 N. E. 1062, 4 L. R. A. 757. He was convicted of manslaughter in the first degree, and it is claimed he was guilty of that crime because at the time of the homicide the defendant was engaged in committing a misdemeanor affecting the person or property of the person killed. The statute provides that homicide is manslaughter in the first degree when committed without design to effect death by a person engaged in

126 N.Y.S.—34

committing or attempting to commit a misdemeanor affecting the person or property, either of the person killed or another.  Section 1050, subd. 1, Pen. Law.  Here the person killed was playing in a public street.  The defendant was committing a misdemeanor because he was driving an automobile at an unlawful rate of speed, but that misdemeanor did not, within the meaning of the statute as I read it, affect "the person or property" either of the person killed or another.  The misdemeanor here referred to has reference to some particular person or property as distinguished from people or property in general.  Entertaining this view, I do not think the facts proved made the defendant guilty of manslaughter in the first degree.  The jury might well have found him guilty of manslaughter in the second degree, because the evidence showed he was not only driving the machine at an unlawful rate of speed, but that he was guilty of culpable negligence in driving it as fast as he was when the boy was struck.

But it is urged that the question of whether the evidence justified a verdict of manslaughter in the first degree cannot be considered upon this appeal because there is no exception in the record raising it.  If my conclusion be correct that the evidence does not establish that the defendant was guilty of manslaughter in the first degree, then the verdict of the jury is without evidence to sustain it, and it does not need an exception to enable this court to consider the question.  Section 527 of the Code of Criminal Procedure expressly provides that, where an appeal is taken to the Appellate Division, it "may order a new trial, if it be satisfied that the verdict against the prisoner was against the weight of evidence, or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below."

For these reasons, I think the judgment of conviction appealed from should be reversed, and a new trial ordered.