■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ANGELO ACEVEDO, Appellant.— Judgment, Supreme Court, New York County, rendered January 23, 1970, resentencing defendant pursuant to *People* v. *Montgomery* (24 N Y 2d 130), to three concurrent terms of 7½ to 10 years' imprisonment, *nunc pro tunc* as of May 7, 1962, following his conviction, upon a jury trial,

of three counts of attempted murder in the first degree, affirmed. We conclude that the conviction of defendant of the counts of attempted murder in the first degree, based upon an "act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual" (former Penal Law, § 1044, subd. 2), is supported by law and the record here. Section 2 of the former Penal Law, applicable here, provided: "Attempt to commit a crime. An act, done with intent to commit a crime, and tending but failing to effect its commission, is 'an attempt to commit that crime'." Here, there was present such an "intent to commit a crime" as was required for the particular crime of murder. Although there is absent "a premeditated design to effect the death of any individual", there existed the design, willfulness and malice inherent in defendant's acts found to be "imminently dangerous to others, and evincing a depraved mind, regardless of human life"; there existed the criminal intent which is classified as a "general and indiscriminate" intent to take human life. (See *Darry* v. *People,* 10 N. Y. 120, 146; *People* v. *Darragh,* 141 App. Div. 408, 415–416, affd. 203 N. Y. 527; see, also, *People* v. *Poplis,* 30 N Y 2d 85; *People* v. *Jernatowski,* 238 N. Y. 188.) Implicit in the verdict of the jury was a finding that all the elements of murder in the first degree were present except the actual killing of the three persons endangered and wounded by defendant's acts. The defendant maliciously committed acts "tending but failing to effect [the] commission" of the particular crime (see former Penal Law, § 2), and absurd, indeed, is a holding that he may not be found guilty of an attempt to commit the crime merely because the seriously wounded victims of his acts did not die. *People* v. *Brown* (21 A D 2d 738), cited with approval in *People* v. *Foster* (19 N Y 2d 150), and relied upon by the dissent, is not in point. There, the conviction was for attempted manslaughter and the court concluded that a conviction of attempted manslaughter was "logically repugnant" because manslaughter, by its specific definition, requires a finding that there was no intent to take life (*People* v. *Brown, supra,* p. 739). Here, as aforesaid, we conclude that the crime defined by section 1044 (subd. 2) of the former Penal Law was, under the circumstances of this case, a crime with a criminal intent in the nature of a general and indiscriminate intent to take life. Concur — Markewich, J. P., Kupferman and Eager, JJ.; Nunez and Murphy, JJ., dissent in the following memorandum by Murphy, J.: After allegedly confessing to firing a rifle from a rooftop with another (which resulted in four persons being wounded) defendant was indicted and charged with four counts of attempted murder in the first degree and 12 related counts of assault. The jury was instructed not to consider the assault counts if they found him guilty of the more serious crime charged; and they found him guilty of three counts of attempted murder. On this appeal, defendant and respondent both assert that he was convicted of a legally impossible crime, i.e., attempted "depraved mind" murder in the first degree. Despite the agreement of the District Attorney and the defendant's counsel, the majority would affirm the conviction. We disagree. Defendant was indicted, on the attempted murder counts, under subdivision 2 of section 1044 of the former Penal Law (now Penal Law, § 125.25) which, in pertinent part, defined murder in the first degree as "The killing of a human being * * * 2. By an act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without a premeditated design to effect the death of any individual". While there is some authority to support the claim that the aforesaid subdivision covers situations where there is a general intent to take life which

is not directed at any individual (*Darry* v. *People*, 10 N. Y. 120; *People* v. *Darragh*, 141 App. Div. 408, affd. 203 N. Y. 527), intent to kill is not necessarily an essential element of the crime. This substantially same provision appeared in the first revised statutes and was interpreted in *Darry* v. *People* (*supra*, p. 146) : " It is clear, I think, from what has been already said, that the subdivision in question does embrace those cases where an intent to take life exists, which is not directed to any particular individual, but is general and indiscriminate. The language of the subdivision, however, at the same time, shows that it was not intended to be confined to those cases, but was designed to include another class, closely akin to and almost identical with those, in which death is produced by acts putting the lives of *many* in jeopardy, under circumstances evincing great depravity and utter recklessness in regard to human life. For instance, a man may fire into a crowd, with the view of destroying life, and he may do so, for the mere purpose of producing alarm, although at the imminent hazard, as he knows, of killing some one. Again, he may open the drawbridge of a railroad, with intent to destroy the lives of the passengers, or he may do it, for the sole purpose of effecting the destruction of the property of the railroad company. The subdivision in question was intended to provide for all these and similar cases indiscriminately, putting them upon the same footing, without regard to the particular intent." In *People* v. *Jernatowski* (238 N. Y. 188, 191) defendant fired several shots into a home, one of which killed a woman, and was convicted of murder in the first degree under the statute here involved. In the course of its opinion affirming the conviction, the court stated: " The substantial complaint made by appellant's counsel and the only one which requires any consideration is that in order to constitute the crime of which defendant has been convicted there must have been present in his mind at the time he fired the shot which killed the decedent, a specific and well-defined intention to kill some one and that there was no evidence of such intention. That is the only question which we find it necessary to discuss even briefly — whether an intent to kill is made a necessary element by the statute under which the defendant has been convicted. We do not think that it is. It is certain that neither principles of fundamental justice nor the more technical rules of criminal law demand that such intent should be made a necessary ingredient of this class of murders. Where a person, as the jury found this defendant did, aware that there are human beings in a house, fires several shots into it, knowing that some one may be killed and with reckless indifference whether he is or not, he ought not to be relieved from the natural consequences of his act because at the time he fired he did not say or think 'I am going to kill.'" Since intent is not a requisite element of this crime, defendant cannot be convicted of an attempt to commit it. As defined in section 2 of the former Penal Law: " An act, done with intent to commit a crime * * * is 'an attempt to commit that crime'." It is fundamental that " an intention to commit a crime whose distinguishing element is lack of intent is logically repugnant." (*People* v. *Brown*, 21 A D 2d 738; see, also, *People* v. *Foster*, 19 N Y 2d 150; *People* v. *Moran*, 123 N. Y. 254.) Accordingly, the judgment of conviction should be reversed and the indictment dismissed.