Jasen, J.
(dissenting). The majority holds that the element of “circumstances evincing a depraved indifference to human life” set forth in subdivision 2 of section 125.25 of the Penal Law is not part of the mens rea of murder in the second degree and that evidence of intoxication is, therefore, inadmissible to negate that element. Since I believe the Legislature intended that a defendant’s alleged intoxication could be used to negate that element of the crime, I respectfully dissent.
Subdivision 2 of section 125.25 of the Penal Law provides that a person is guilty of murder in the second degree when “[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person”. This statute evolved without substantial change from the Revised Statutes of 1829 which, inter alia, characterized a homicide as murder “[w]hen perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual”. (Rev Stat of NY [1829], part IV, ch I, tit I, § 5, subd 2.) While this statutory language was changed slightly in 1967, the new statute was intended to be “substantially a restatement” of the former provision. (Temporary State Comm on Revision of Penal Law and Criminal Code, Proposed NY Penal Law, § 339 [1964]; Gilbert Criminal Code and Penal Law [1967], § 130.25, p 1C-63; see, also, Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev 417, 437.) The majority’s unexplained refusal to recognize this crucial piece of legislative history represents the fundamental flaw in its reasoning. As the majority concedes, the predecessor statutes to subdivision 2 of section 125.25 of the Penal Law defined the requisite mens rea “as a depraved mind” (majority opn, at p 277). Thus, unless a significant change was intended by the Legislature in enacting subdivision 2 of section 125.25, this statute must be similarly construed as charac *282 terizing “depraved indifference” as a mens rea. That no such change was intended was made abundantly clear by the State commission in declaring that the new statute was intended to be “substantially a restatement” of the former. (Id.) Nevertheless, the majority disregards entirely the legislative intent behind the statute and states, without any authority in support thereof, that “[t]he concept of depraved indifference was retained in the new statute not to function as a mens rea element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder”. (At pp 277-278.) Inasmuch as the cases construing this statute have consistently held that “depraved mind” and “depraved indifference” connote a culpable mental state, I see no reason why the majority should reach a different result now.
In Darry v People (10 NY 120, 148), our court held that the statute was designed “to provide for that class of cases, and no others, where the acts resulting in death are calculated to put the lives of [many] persons in jeopardy, without being aimed at any one in particular, and are perpetrated with a full consciousness of the probable consequences.” (Emphasis supplied.) Thus, in construing the 1854 version of the statute, a version which included the element “depraved mind” but not “recklessly”, as requiring proof that the accused was aware of and consciously disregarded the probable consequences of his act, the court viewed the “depraved mind” element as a culpable mental state. (See, also, People v Darragh, 141 App Div 408, 413-414, affd 203 NY 527.) Indeed, the plain wording of the statute compelled that conclusion. Similarly, in People v Jernatowski (238 NY 188, 191), this court held that where a person is “aware that there are human beings in a house [and] fires several shots into it, knowing that some one may be killed and with reckless indifference whether he is or not, he ought not to be relieved from the natural consequences of his act”. (Emphasis supplied.) Recognizing that the depraved mind murder statute required proof of consciousness of the risks of defendant’s conduct and a disregard of same, the court placed great emphasis on the fact that defendant was fully aware of the consequences of his act. It seems clear, therefore, that the defendant in the case *283 before us should be treated similarly and be allowed to show that as a result of his intoxication he was not aware of what he was doing and the risks involved and was not, therefore, competent to consciously disregard those risks. If such proof were offered and believed, defendant could be convicted only of manslaughter.
This conclusion finds strong support in a recent decision of this court where it was reasoned that, under the present version of the statute, “circumstances evincing a depraved indifference to human life” plus “recklessness”, constitutes conduct of “graver culpability” which involves something more serious than mere recklessness. (People v Poplis, 30 NY2d 85, 88.) Although the majority chooses to ignore this plain language, by speaking in terms such as “graver culpability” this court made it abundantly clear that “depraved indifference” was to be construed as a mens rea involving a state of mind more vicious than recklessness but less so than intent. Inasmuch as proof of intoxication is admissible “whenever it is relevant to negative an element of the crime charged” (Penal Law, § 15.25), it should have been admitted here to show that defendant did not possess a state of mind sufficiently culpable to warrant a conviction for murder rather than manslaughter.
While the majority correctly states that “[t]he crime differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant’s conduct” (at p 274), can there be any doubt that to disregard the risks attending his conduct defendant must have at least been aware of those risks? As stated by Arnold D. Hechtman, Counsel to the Commission on Revision of the Penal Law and Criminal Code, the fatal conduct must be performed with “a depraved kind of wantonness.” (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.25, p 399.) Wantonness, a term used by the majority in defining what a defendant’s conduct must amount to before a conviction for depraved mind murder can be sustained (at p 277), is commonly defined as requiring a conscious doing of some act with knowledge of existing conditions and an awareness of the *284 risks involved.[1] Thus, it should be clear beyond cavil that “depraved indifference” was intended by the Legislature to constitute a culpable state of mind which could be negated by proof that the actor was so intoxicated he was not aware of existing conditions or the risks inherent in his conduct.
The construction which I would give the depraved mind murder statute is not only consistent with the Legislature’s intent, the history of the statute and precedent of this court, but is also in line with the basic underpinnings of our system of criminal justice. The rule announced by the "majority today effectively eviscerates the distinction between manslaughter in the second degree (Penal Law, § 125.15, subd 1) and murder in the second degree (Penal Law, § 125.25, subd 2) with respect to the accused’s state of mind. The majority holds that mere recklessness is a sufficient mens rea under the depraved mind murder statute if the objective circumstances surrounding the killing “presented a grave risk of death and did in fact result in the death” of another. (At p 275.)
Historically, our criminal law is based upon a theory of “punishing the vicious will.” (Pound, Introduction to Sayre, Cases on Criminal Law [1927], p XXXVI.) It is a deep-rooted part of our jurisprudence that, in the ordinary case, only those offenders who consciously choose to do evil rather than good will be punished. (Morissette v United States, 342 US 246, 250-251.) Under the majority’s rule, however, a person who possessed only a reckless state of mind when he caused the death of another could be convicted of depraved mind murder (Penal Law, § 125.25, subd 2) and sentenced to a term of 15 years to life imprisonment simply because objective circumstances surrounding the killing presented a “grave risk” of death even though the actor, due to intoxication, was unaware of those circumstances and could not appreciate the risks. The majority *285 would also hold that another person who is fully aware of a “substantial and unjustifiable risk” and consciously disregards that risk can only be found guilty of manslaughter in the second degree and sentenced to as little as one and one-half years in jail. (Penal Law, § 125.15, subd 1; § 15.05, subd 3.) While there may be a technical distinction between a “grave” risk and a “substantial” one, the only real difference is about 15 years in prison. (See Gegan, 49 St John’s L Rev, op. cit., at p 442.) To accept this distinction as justification for the disparate penalties which the respective crimes carry defies basic principles of fairness and logic. I simply cannot agree that the Legislature intended that convictions for murder as opposed to manslaughter would turn upon the nature of the objective surrounding circumstances regardless of whether or not the accused was aware of those circumstances or could appreciate the consequences of his conduct.[2]
In my view, the Legislature purposely distinguished between reckless manslaughter and depraved mind murder, intending that depraved indifference plus recklessness would connote a mens rea more culpable than recklessness alone and nearly as culpable as intent. The differences between the mental states set forth in the reckless manslaughter, depraved mind murder and intentional murder statutes are easily delineated, although somewhat difficult to apply. A person acts recklessly in causing the death of another when he is aware of and consciously disregards a substantial and unjustifiable risk. (Penal Law, § 15.05, subd 3.) A person intentionally kills another when his “conscious objective” is to cause the death of the victim. (Penal Law, § 15.05, subd 1.) A person acts with depraved indifference, however, when he engages in conduct whereby he does not intend to kill but is so indifferent to the consequences, which he knows with substantial certainty will result in the death of another, as to be willing to kill. (See Gegan, 49 St John’s L Rev, at p 446, citing English Law Commission Report [Gr Brit, 1966], Imputed *286 Criminal Intent: Director of Public Prosecutions v Smith, par 17.)[3] It is at this point that reckless homicide becomes knowing homicide and the killing differs so little from an intentional killing that parity of punishment is required. (Gegan, 49 St John’s L Rev, op. cit., at p 447.) This is so not because the surrounding circumstances happened to create a “grave” as opposed to a “substantial” risk, but because the accused has acted with greater culpability and a wickedness akin to that of one whose conscious objective is to kill.
By this approach, a person who acts without an awareness of the risks involved, due to intoxication or otherwise, will be punished for manslaughter, while a person who acts in a way which he knows is substantially certain to cause death, although not intending to kill, will be treated the same as a person who intentionally kills. It seems to me that this is the far more reasonable approach and the one intended by the Legislature.
Additionally, I note that the majority’s rationale appears to be inconsistent with the over-all legislative scheme manifest in article 125 of the Penal Law. In enacting subdivision 3 of section 15.05 of the Penal Law, the Legislature declared that a reckless killer should not be permitted to hide behind a defense of intoxication. However, recognizing that a reckless killer, whether intoxicated or not, should not be punished as severely as a person who intentionally takes the life of another, the lawmakers categorized reckless homicide as manslaughter in the second degree (a class C felony), rather than murder in the second degree (a class A-Tfelony). It is, therefore, anomalous to say, as the majority does, that the Legislature *287 intended that an individual who had no awareness of the seriousness of his conduct or the circumstances surrounding his actions due to intoxication and had no intent to kill should be punished as severely as the intentional killer. Furthermore, as a result of the majority’s interpretation of the statute, prosecutors will be able to obtain murder convictions simply by proving that the defendant acted recklessly in killing another. This is so because the simple fact that the defendant’s conduct resulted in the victim’s death will, with 20/20 hindsight, be proof enough to a jury that the circumstances existing at the time and place of the killing presented a “grave risk” of death and that the defendant, therefore, acted with depraved indifference to human life.[4] This result is clearly at odds with the legislative scheme set forth in article 125 of the Penal Law.
Further proof of this fact is manifest in a comparison of the three subdivisions of section 125.25 of the Penal Law. Persons accused of intentionally killing another, as well as those accused of felony murder, are permitted to mitigate their crimes by establishing certain affirmative defenses. (Penal Law, § 125.25, subds 1, 3.) However, under the majority’s construction of subdivision 2, a person charged with depraved mind murder who merely acted recklessly in causing the death of another is precluded from attempting to mitigate his crime to manslaughter.
Finally, with respect to the majority’s statement that “the risk of excessive drinking should be added to and not subtracted from the risks created by the conduct of the drunken defendant for there is no social or penological purpose to be served by a rule that permits one who voluntarily drinks to be exonerated from failing to foresee the results of his conduct if he is successful at getting drunk” (at pp 280-281), I would only note that although this may be an accurate representation of what the majority believes the law should be, the Legislature has decided *288 otherwise (see Penal Law, § 15.25) and it is this court’s responsibility to construe the statute accordingly.
Inasmuch as the legislative history of subdivision 2 of section 125.25 of the Penal Law, prior precedent of this court and basic notions of justice make clear that the element of “depraved indifference” should be construed as a mental state more culpable than recklessness, evidence of defendant’s intoxication should have been admitted, pursuant to section 15.25 of the Penal Law, to negate that element of the offense.
Accordingly, I would reverse the conviction and order a new trial.
Judges Jones, Wachtler and Kaye concur with Judge Simons; Judge Jasen dissents and votes to reverse in a separate opinion in which Chief Judge Cooke and Judge Meyer concur.
Order affirmed.

. A leading lexicon defines “wantonness” as: “Conscious doing of some act or the omission of some duty with knowledge of existing conditions and consciousness that, from the act or omission, injury will likely result to another. Conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure. A reckless or intentional disregard of the property, rights, or safety of others, implying, actively, a willingness to injure and disregard of the consequences to others, and, passively, more than mere negligence, that is, a conscious and intentional disregard of duty.” (Citations omitted.) (Black’s Law Dictionary [5th ed], p 1419.)

. While I would agree with the majority that the Legislature could constitutionally exclude intoxication as a factor which negates the element of “depraved indifference” just as it has with respect to the element of “recklessness” (see Penal Law, § 15.05, subd 3), the simple fact is that the Legislature has not done so; indeed section 15.25 of the Penal Law has done just the opposite.

. As the majority correctly points out, the construction I would give to subdivision 2 of section 125.25 “is not found in our statute”. (At p 279, n 2.) I note parenthetically that neither is the majority’s. Moreover, the construction I urge is consistent with the legislative history of the statute, the cases construing it and basic principles of criminal justice. That the English Law Commission, whose criticism of reasoning similar to the majority’s (see Director of Public Prosecutions v Smith [1961], AC 290, 3 WLR 546) resulted in the enactment of the English Criminal Justice Act of 1967 overturning the Smith decision, agrees with my view, does not detract from the correctness of my position.
I would also note that the failure to specifically define “depraved indifference” in subdivision 1 of section 15.15 is irrelevant, for that statute, by its own terms, was not intended to be an all inclusive list of the mental states to be found in the Penal Law. The majority’s reliance on said omission is, therefore, misplaced.

. It is curious that the majority would opine that the depraved mind murder statute “is not and never has been considered as a substitute for intentional homicide” and that it would be an unusual case where intoxication would “negative the intent [element] of an intentional homicide [when] it would have no similar effect on the same act charged as done recklessly in a depraved mind murder” (at p 279). Indeed, this is precisely what happened in this case where defendant was acquitted of intentional murder yet the prosecutor was still able to obtain a murder conviction from the jury under the depraved mind murder statute.